**HART v. B. F. KEITH VAUDEVILLE EXCHANGE et al. (two cases).**

(Circuit Court of Appeals, Second Circuit. May 3, 1926.)

Nos. 303, 304.

**1. Monopolies ⬅➡12(2)—Refusal of theater owners to do business with agent booking "big time vaudeville" acts held not violation of Sherman Anti-Trust Act or Clayton Act (Sherman Anti-Trust Act, § 7 [Comp. St. § 8829]; Clayton Act [38 Stat. 730]).**

"Vaudeville" being a term describing a species of theatrical entertainment, composed of isolated acts forming a balanced show, the joint refusal of theater owners to do business with plaintiff as booking agent for "big time" or "two-a-day" acts *held* not violation of Sherman Anti-Trust Act, § 7 (Comp. § 8829), or Clayton Act; the contracts negotiated being for personal service, not a subject of commerce, and the interstate transportation of stage properties being merely incidental.

**2. Monopolies ⬅➡12(1)—Test of legality of agreement regulating trade is whether it may suppress, or even destroy, competition.**

The test of legality of an agreement concerning or regulating trade is whether it is such as merely regulates and permits competition, or is such as may suppress, or even destroy, competition.

**3. Monopolies ⬅➡28—Plaintiff, suing for damages for violation of Sherman Anti-Trust Act, must prove, not only a monopoly, but damage to him as a proximate result thereof (Comp. St. § 8820 et seq.).**

Plaintiff, suing for damages for violation of Sherman Anti-Trust Act (Comp. St. § 8820 et seq.), has burden of proving, not only an attempt or actual monopolization, but also an injury to him as a proximate result thereof.

**4. Contracts ⬅➡116(1)—Monopolies ⬅➡12(2)—Neither common law nor Sherman Anti-Trust Act requires one to do business with another who is objectionable, if that objection is based on sufficient reason (Comp. St. § 8820 et seq.).**

A person may do business with whomsoever he desires, and neither common law nor Sherman Anti-Trust Act (Comp. St. § 8820 et seq.) requires one to do business with another, if he is objectionable and objection is based on sufficient reason.

Appeal from and in Error to the District Court of the United States for the Southern District of New York.

Action by Max Hart against the B. F. Keith Vaudeville Exchange and others, for damages under the Sherman Anti-Trust Act (Comp St. § 8820 et seq.) and the Clayton Act (38 Stat. 730), with suit for injunction under the same acts from obstructing, restraining, and excluding the plaintiff from freely and fully participating in the business of negotiating contracts in his business, tried as one pursuant to stipulation of parties. There was a judgment and a decree in favor of the defendants. Plaintiff sues out a writ of error. He also appeals. Affirmed.

See, also, 262 U. S. 271, 43 S. Ct. 540, 67 L. Ed. 977.

Eppstein & Axman, of New York City (Martin W. Littleton, Louis B. Eppstein, Laurence H. Axman, and Ira W. Hirshfield, all of New York City, of counsel), for plaintiff.

Maurice Goodman, of New York City, for defendant B. F. Keith Vaudeville Exchange.

J. Henry Walters, of New York City, for defendants Albee and Murdock.

William F. S. Hart, of New York City (Charles E. Hughes and Maurice Goodman, both of New York City, of counsel), for defendant Proctor.

Charles H. Studin, of New York City (Leon Mintz, of New York City, of counsel), for defendants Orpheum Circuit, Inc., Excelsior Collection Agency, Inc., Beck and Vincent.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. [1] By stipulation, the parties agreed to try these causes as one and to enter a judgment and decree accordingly. They were tried before the District Judge, a jury having been waived in the law action. The decision in each case depends principally upon the determination of whether the parties were engaged in interstate commerce in their respective business. They may be and will be considered in one opinion, and we shall refer to the parties as plaintiff and defendants as below.

Considering the facts most favorable to the plaintiff, the plaintiff's business is said to be that of booking "big time" vaudeville acts and acting as personal representative for the owners of such "big time" acts. He negotiated booking contracts upon an interstate schedule. "Vaudeville" is a term used in the trade as describing a species of entertainment composed of a number of isolated acts and attractions put together so as to form a balanced show. The acts run in sequence. The theaters where they are played are referred to as vaudeville houses. A "two a day" performance is referred to as "big time" vaudeville act. There is another class of theaters, referred to as "small time" and "continuous performance" houses.

The vaudeville business consists of the author or creators of vaudeville acts, who sell or otherwise dispose of their offerings for cash or on a royalty basis; producers of acts who acquire the right to produce vaudeville acts, procuring the scenery, appliances, costumes, animals, actors, or artists necessary for the production of the act; artists or actors who perform in vaudeville acts; also booking agents, who procure contracts for appearance of vaudeville acts in the vaudeville theaters. After such booking contracts are made, the actors or artists, with whatever clothing they may need, travel from state to state throughout the United States. Much of the scenery is found in the particular theater where they act. There are times when appliances, scenery, and animals necessary for a particular artist's use in acting are taken with him. There is also the personal representative who represents the owners of vaudeville acts in their relation with booking agencies. They represent the principals in the negotiations for contracts, securing the best terms for their employer, and laying out the routes and caring for the transportation of the act—actors, scenery, or whatever else may make up the act.

The theater owners are the operators of the theaters in which the vaudeville entertainment is produced. The vaudeville act may require in its performance animals of various kinds, as well as clothing. The defendants' business may be generally described as that of booking contracts for vaudeville performers to perform in theaters throughout the United States; also acting as their manager and representative. Some of the defendants named are owners of theaters referred to as the Keith and Orpheum Circuits.

The violation of section 7 of the Sherman Act of July 2, 1890, c. 647 (26 Stat. 209 [Comp. St. § 8829]), which it is said injured the business or property of the plaintiff, and which directly and unduly restrained interstate commerce, was shown by the testimony of the plaintiff to consist of the Keith interest enjoying the scope of their operations in the territory apportioned to it and using contracts containing restrictive covenants against other theater interests, while the same practices were indulged in by the Orpheum Circuit in the West, the territory apportioned to it. In the Eastern territory, the right to book for all other circuits was obtained by the Keith interests. There is evidence that the owners of theaters by agreements surrendered control of their properties; new corporate entities were organized, which, in effect, required the surrender of the control of the various theaters as a condition precedent to procuring for such theaters their attractions. When new competition arose in the booking end of the business, such competitors were eliminated by the payment of large sums of money, sometimes secretly paid, and an agreement made by the parties that the seller would not engage in the business of booking vaudeville attractions, or permit any theater owned or controlled by them to engage in such business. Their contracts required payment of money for the privilege of continuing business. There was price fixing by way of arbitrarily determining the prices to be paid for vaudeville acts. Collection agencies owned and controlled by the defendants required managers and personal representatives of actors to pay compensation for the privilege of obtaining bookings. Other ways of canceling unexpired contracts were indulged in.

The theory of the plaintiff's case is that

the defendants have monopolized the business of giving vaudeville exhibitions. It is not that this business of giving vaudeville exhibitions constituted interstate commerce, but that the owners of the several theaters of the circuits refused to engage in transactions of interstate commerce with others in their business of booking acts, which were to pass in interstate commerce, to be performed in the several states as exhibitions or entertainments. The argument is that the defendants combined to control all "machinery" for booking attractions and dominated the "purely interstate element of their business," using their power to crush the plaintiff in his business, and to restrain owners of vaudeville theaters, producers, artists, and others from negotiating with one another. The real test suggested by the plaintiff is whether or not the acts complained of directly and unduly restrained interstate commerce.

The booking contract referred to is a contract made for the employment of the artist. In some instances it did, and in others it did not, provide for transportation or production of properties. To satisfy the particular number of persons who were engaged to perform, it did not always require the furnishing or presentation of costumes or other paraphernalia. They did require the artist to furnish the music score or sheet music. By a law of the state of New York (chapter 700 of the Laws of 1910 amending General Business Law [Consol. Laws, c. 20] art 11), the contract must contain a provision as to the payer of the transportation and the contracts provide that the artist shall pay it excepting only in the event the place of performance is changed, when the manager is required to defray the extra cost. The parties have made the paramount consideration of the contract, the personal service of the performer. The form of the contract authorizes the reduction of 5 per cent. from salary for the services of the booking agent.

The testimony bristles with references to the salary, services, and artists, who are employed under the contracting arrangements, and it may be fairly said that what is contracted for is an entertainment for hire upon the stage of the theater with the actors or artists as entertainers. It makes little difference whether they are high-class artists or participants in small acts. Another noticeable feature of the contracts made with artists or actors is that they refer to the service as "personal." Illness excuses and death terminates the agreement. They are contracts for personal services. Shubert v.

Rath (C. C. A.) 271 F. 827, 20 A. L. R. 846; Keith v. Kellermann (C. C.) 169 F. 196. Each act is booked to be performed on the stage of a theater or theaters referred to in the contract.

The defendants urge that the case of Federal Baseball Club v. National League, 259 U. S. 200, 42 S. Ct. 465, 66 L. Ed. 898, 26 A. L. R. 357, is controlling and decisive; the reason therefor being that their business is giving exhibitions or entertainments, which are purely state affairs, that it is the personal effort contracted for which is not related to the production, and therefore it is not a subject of commerce. Also it is argued that which, in its consumption, is not commerce, does not become commerce among the states, because transportation throughout the states takes place. This is the basis of the decisions in the authority cited. The argument proceeds that the transportation in interstate commerce of artists or actors and the costumes and paraphernalia used by them is but incidental of the main purpose to entertain or act upon the vaudeville stage.

The case at bar was considered by the Supreme Court after a dismissal on motion before trial. Hart v. Keith Exchange, 262 U. S. 271, 43 S. Ct. 540, 67 L. Ed. 977. The court reversed the dismissal of the complaint, holding in effect that the allegations of the complaint were sufficient to withstand demurrer and required the case to proceed to trial. Justice Holmes, who delivered the opinion, observed:

"It is enough that we are not prepared to say that nothing can be extracted from this bill that falls under the act of Congress, or at least that the claim is wholly frivolous. The bill was brought before the decision of the Baseball Club Case, and it may be that what in general is incidental, in some instances may rise to a magnitude that requires it to be considered independently. The logic of the general rule as to jurisdiction is obvious and the case should be decided upon the merits unless the want of jurisdiction is entirely clear. What relief, if any, could be given and how far it could go it is not yet time to discuss."

The defendants offered no proof below, for the cases were disposed of at the end of the plaintiff's proof. From an examination of the proof, in an effort to ascertain whether the magnitude of the properties transported might require us to hold that its transportation was more than incidental, we observe that the singers, sketch teams, comedians, and the like were required to carry no scenery or property, because the theaters

possessed. such, but they did carry some clothing with them; and in a record given of some 6,000 vaudeville acts of all kinds, during a period of 18 years, one witness testified that there were animals required in some 30 or 37 of these acts; another, a producer of some 22 years, some 45 or 48. It is apparent that animal acts and flash acts are exceptions in the kind of vaudeville acts which go to make up the vaudeville program. The great majority and the high-priced artists seem to give merely their personal services in the performance. A concession at the trial stated that in 1920–1921 the Keith Vaudeville Exchange booked 3,-800 vaudeville acts, and 11 per cent. carried paraphernalia in boxes and crates. This must be considered to be an incidental feature of the business, rather than the dominant one. There are other estimates of the amounts carried which are not important here to relate. It is sufficient to liken such property to that of the baseball players' masks, balls, and bats used by them, and which were considered incidental in the Federal Baseball Case.

The case is distinguishable from Binderup v. Pathé Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308, where manufacturers and distributors of motion picture films, in the regular course of their business, shipped them from one state to another, to be used by the consignee, as lessee, under agreements which, by their terms, were deemed and construed to be contracts of the state from which the films were sent, and which licensed and obliged the lessee to exhibit the pictures for specified periods in the motion picture theaters, reserving rentals to the lessors and providing for the ultimate shipment by the lessee upon advices to be given to them. The court held that the business of the lessors and their transactions with the lessees were in interstate commerce, even though they maintained agencies in the state where the films were received by the lessor, and that an exhibitor of such motion pictures, who had been procuring films, through agreements made in interstate commerce with members of a combination, and could procure them in no other way, might recover damages for the refusal to deal with him. There the films were leased, transported, and delivered in interstate commerce, and to forbid the lessor to continue leasing them was a restriction of that commerce.

But the business of acting in a theater is purely a state affair. The mere fact that the actors were obliged to cross state lines and have transportation paid, in some instances, does not change the character of the service, nor of the business. As said in Hooper v. California, 155 U. S. 655, 15 S. Ct. 210 (39 L. Ed. 297): "If the power to regulate interstate commerce applied to all the incidents to which said commerce might give rise and to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the states, and would exclude state control over many contracts purely domestic in their nature." The booking contract at bar is not an instrumentality of interstate commerce. It is a mere incident of commercial intercourse.

In Ramsay v. Billposters of United States & Canada, 260 U. S. 503, 43 S. Ct. 167, 67 L. Ed. 368, an unlawful combination of billposters was organized to destroy competition in the business of billposting, by limiting and restricting commerce in posters to channels dictated by them, and excluded others in the trade and enriched themselves by demanding noncompetitive prices. It was held that solicitors for advertising of customers, who in many states prepared, designed, purchased, and sold posters, and caused them to be displayed by the local billposters in many places throughout the states, whose business suffered from such combination, were entitled to recover damages. In that case, the posters were transported in commerce from one state to another, and there is not the element of mere personal service, as in the case at bar. If the various acts of the defendants referred to have damaged the plaintiff in his business, or have interfered or restrained him in conducting his business, to his detriment and damage, it has been to his local business of booking contracts. It has not been an interference with interstate movement of stage properties or paraphernalia used in the vaudeville theatrical business. United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; Hopkins v. United States, 171 U. S. 578, 19 S. Ct. 40, 43 L. Ed. 290.

[2] Vaudeville entertainment itself is a business represented by various persons and corporations. Its acts and performers are selected, which the person or corporation thinks sufficient in quality to attract the theater-going public, and this of necessity must apply to so-called "high-class" vaude-

ville as well as others. It is hard to conceive of how the defendants could control or monopolize vaudeville actors, who are free agents, able to contract from week to week with whom they please. Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co. (D. C.) 224 F. 566. Any other theater owner can book or engage the same acts that have been performed. This is illustrated by the testimony in this record of well-known managers of vaudeville circuits. Every agreement concerning trades or regulation of trade to a certain extent restrains. The test of legality is whether the restraint imposed is such as merely regulates and permits competition, or whether it is such that it may suppress or even destroy competition. The facts peculiar to the particular business to which the restraint is applied must be considered in each instance—the nature of the restraint and its effect, actual or probable. Chicago Board of Trade v. United States, 246 U. S. 231, 38 S. Ct. 242, 62 L. Ed. 683. [3] The right to recover damages under the Sherman Act requires proof of an injury to the business or property of the person or corporation suing "by reason of anything forbidden or declared to be unlawful by this act." The plaintiff who seeks recovery must bear the burden of proof, not only that there was an attempt or actual monopolization or a combine or conspiracy in violation of the anti-trust law, but it must be shown that there was injury to him as a proximate result. Jack v. Armour & Co. (C. C. A.) 291 F. 741; Rice v. Standard Oil Co. (C. C.) 134 F. 464. The plaintiff has testified as to the reasons for the refusal of the defendants to do business with him in accepting booking contracts. He says much, by his own admissions, to justify the reason for refusing to do business with him. A fist fight with another agent was started in the office of the defendants and continued in the immediate vicinity, and led to the suspension of his business relations with the defendants. His indecent and profane language in and about the office was proven, and finally the defendants refused to do business with him, when he attempted to take an act which had already been played in one of defendants' theaters and claimed it as his own.

[4] The right of a person to do business with whomsoever he desires is well established. Adair v. United States, 208 U. S. 161, 28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; Raymond Bros.-Clark Co. v. Federal Trade Commission (C. C. A.) 280 F. 529; affd. 263 U. S. 565, 44 S. Ct. 162, 68 L. Ed. 448, 30 A. L. R. 1114. There is no reason based on the common law or the Sherman Law, which requires the defendants to do business with plaintiff, if he is objectionable to them, and that objection is based upon sufficient reason. Federal Trade Commission v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 64 L. Ed. 993; Locker v. American Tobacco Co., 218 F. 447, 134 C. C. A. 247. We hold that there was no interference or restraint in business of the plaintiff which constituted a breach of the Anti-Trust or Clayton Act, and that the decree and judgment below dismissing the bill of complaint were properly granted.

Decree and judgment affirmed, with costs.