FEDERAL BASEBALL CLUB OF BALTIMORE, INC. *v.* NATIONAL LEAGUE OF PROFESSIONAL BASEBALL CLUBS, ET AL.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 204.  Argued April 19, 1922.—Decided May 29, 1922.

1. The business of providing public baseball games for profit between clubs of professional baseball players in a league and between clubs of rival leagues, although necessarily involving the constantly repeated traveling of the players from one State to another, provided for, controlled and disciplined by the organizations employing them, is not interstate commerce. P. 208.

2. *Held* that an action for triple damages under the Anti-Trust Acts could not be maintained by a baseball club against baseball leagues and their constituent clubs, joined with individuals, for an alleged conspiracy to monopolize the baseball business resulting injuriously to the plaintiff. P. 209.

269 Fed. 681; 50 App. D. C. 165, affirmed.

ERROR to a judgment of the Court of Appeals of the District of Columbia reversing a judgment for triple damages under the Anti-Trust Acts recovered by the

plaintiff in error in the Supreme Court of the District and directing that judgment be entered for the defendants.

Mr. Charles A. Douglas and Mr. William L. Marbury, with whom Mr. L. Edwin Goldman and Mr. William L. Rawls were on the briefs, for plaintiff in error.

Defendants are voluntary associations and corporations engaged upon a vast scale, involving the investment of millions of dollars, in the business of providing, by the transportation from State to State of baseball teams and their necessary attendants and equipment, exhibitions of professional baseball. The court is not concerned with whether the mere playing of baseball, that is the act of the individual player, upon a baseball field in a particular city, is by itself interstate commerce. That act, it is true, is related to the business of the defendants, but it can no more be said to be the business than can any other single act in any other business forming a part of interstate commerce.

The question with which the court is here concerned is whether the business in which the defendants were engaged when the wrongs complained of occurred, taken as an entirety, was interstate commerce, or more accurately, whether the monopoly which they had established or attempted to establish was a monopoly of any part of interstate commerce.

At the foundation of the business of one of these leagues—in its primary conception—is a circuit embracing seven different States. No single club in that circuit could operate without the other members of the circuit, and accordingly in the very beginning of its business the matter of interstate relationship is not only important but predominant and indispensable.

Each game symbolizes a contest of skill between the two cities that have been brought together by means of interstate communication and travel. Each team of each

club in the league carries with it, and it is essential to the profit of the enterprise that it should carry with it, its representative character; it symbolizes the great city that it represents to those assembled to witness the contest.

In addition to this representative city and state aspect, there is also the element of intersectional rivalry. Experience has shown that the game is most largely patron-ized when clubs are so located as to provide a contest for supremacy between the Eastern and Western sections of the country.

It is necessary to distinguish between baseball as a sport, that is, where it is played merely as a means of physical exercise and diversion, and this business of pro-viding exhibitions of professional baseball. The business of Organized Baseball represents and has represented for many years, an investment of colossal wealth. Defend-ants who dominate Organized Baseball are not engaged in a sport. They are engaged in a money-making business enterprise in which all of the features of any large com-mercial undertaking are to be found. When the teams of the National or American Leagues or of any other league are sent around the circuit of the league, they go at the direction of employers whose business it is to send them, and whose profits are made as a result of that busi-ness operation.

When the profit-making aspect of the business is ex-amined, it will be found that the interstate element is still further magnified. The vast investment of capital which has been made in it is required, among other things, in order to provide a place at which the teams in the league may play their contests. Each club has a ball park, with stands erected upon them, sometimes, as in the case of a major league club, costing several mil-lions of dollars. Every club in the league earns its profit not only by the drawing capacity of its team at home, but also by that of the teams of the clubs which its team

visits in the various cities in the league. The gate receipts in all of the cities in which the clubs are located are divided according to a definite proportion, fixed by agreement between the club of the city in which the game is played and the club employing the visiting team.

In no other business that can now be recalled is there such a close interrelationship and interdependence between persons in one State and persons in another. The personality, so to speak, of each club in a league is actually projected over state lines and becomes mingled with that of the clubs in all the other States. The continuous interstate activity of each is essential to all the others. The clubs of each league constitute a business unit embracing territorially a number of different States. While each club has, of course, a local legal *habitat,* yet from a practical business standpoint it is primarily an ambulatory organization.

It is difficult to perceive the relevancy of any discussion about an article of commerce in this case. Commerce may be carried on in one of its forms by traffic in articles of merchandise, but there are countless forms in which it may be carried on without traffic in such articles. *Gibbons* v. *Ogden,* 9 Wheat. 189.

It is also difficult to discern the relevancy of the contention that personal effort is not an article of commerce. Personal effort, while it may not be an article of commerce, is often commerce itself, but we are not concerned with any such question here. It may be passed by saying that it has been adjudicated by this court in the *Hoke Case,* 227 U. S. 308, that interstate commerce may be created by the mere act of a person in allowing himself to be transported from one State to another, without any personal effort; and further that it is very difficult to see how *International Textbook Co.* v. *Pigg,* 217 U. S. 91, could have been decided as it was, except upon the

principle that the mere exchange of instruction and information, which is about as purely a matter of personal effort as anything that can be imagined, may be a subject of interstate commerce.

If transactions in interstate commerce were to be judged by their isolated ultimate results, as the defendants seek to separate the act of a player in throwing a ball upon a ball field from all the steps which are taken to bring the ball player in the due course of business from other States, of course their interstate character could be plausibly argued away. By such a process of reasoning the American Tobacco Company, for instance, might have removed its gigantic monopoly from the operation of the Sherman Act. See *United States* v. *American Tobacco Co.,* 221 U. S. 106, 184; *Standard Oil Co.* v. *United States,* 221 U. S. 1, 68; *Swift & Co.* v. *United States,* 196 U. S. 375.

In the business now under consideration throughout the playing season the ball teams, their attendants and paraphernalia, are in constant revolution around a pre-established circuit. Their movement is only interrupted to the extent of permitting exhibitions of baseball to be given in the various cities. When exhibitions in one city are completed the clubs resume, according to the agreement made, and plan of business long established, their course of travel on to another city, and thus on and on until the schedule of exhibitions is completed. The interruption in interstate movement is nothing like as great as that in the *Swift Case, supra.* The constant movement of the teams from State to State during a period of over five months each year, is under a single direction and control and in pursuance of one object.

See *Champion* v. *Ames,* 188 U. S. 321; *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.,* 96 U. S. 1; *United States* v. *Patten,* 226 U. S. 525; *Loewe* v. *Lawlor,* 208 U. S. 274; *Western Union Telegraph Co.* v. *Foster,*

247 U. S. 105.  See particularly *Marienelli* v. *United Booking Offices,* 227 Fed. 165, where the question was presented as to whether a company engaged in booking vaudeville performers for a circuit embracing theatres in cities in different States was engaged in interstate commerce within the Sherman Act.  Also, *Motion Picture Patents Co.* v. *Universal Film Mfg. Co.,* 235 Fed. 401.

It is common knowledge that baseball is the preëminent American sport.  Millions of people follow the daily reports of the results of the games in the press, and in the large cities gather in the afternoons around the newspaper offices to see the bulletin reports of the scores. Not only so, but vast numbers of people travel from one city to another for the purpose of witnessing the games. Telegraph facilities are installed at all the ball parks in the Major Leagues, and in those of the more important Minor Leagues, where reports of the games are sent out and are received throughout the country.

Each league contracts for a uniform type of baseball, which is used in tremendous numbers and shipped by the manufacturer from time to time as they are needed by the various clubs.

These incidents, while in themselves not determinative of the question of whether or not the business is interstate in character, yet, when considered in connection with its main features, emphasize the truth of what has before been said, that there is scarcely any business which can be named in which the element of interstate commerce is as predominant as that in which defendants are engaged.

The agreement and combination entered into and maintained by defendants whereby the entire business in the United States of providing exhibitions of professional baseball was brought under the control of defendants and their confederates in Organized Baseball, amounted in law to a conspiracy in restraint of trade

among the several States and a monopoly or an attempt to monopolize a part of commerce among the several States within the meaning of the Sherman Act.

There is no testimony in this case legally sufficient to show that the plaintiff has waived its right to recover damages under the Sherman Act.

*Mr. George Wharton Pepper,* with whom *Mr. Benjamin S. Minor* and *Mr. Samuel M. Clement, Jr.,* were on the brief, for defendants in error.

Organized Baseball is not interstate commerce and does not constitute an attempt to monopolize within the Sherman Act.

Personal effort, not related to production, is not a subject of commerce; and the attempt to secure all the skilled service needed for professional baseball contests is not an attempt to monopolize commerce or any part of it. Clayton Act, § 6; *Paul v. Virginia,* 8 Wall. 168; *Hooper v. California,* 155 U. S. 648; *Metropolitan Opera Co. v. Hammerstein,* 147 N. Y. S. 532; *In re Duff,* 4 Fed. 519; *In re Oriental Society,* 104 Fed. 975; *People v. Klaw,* 106 N. Y. S. 341. The Department of Justice has ruled that the business conducted by Organized Baseball was not in violation of the Sherman Act; and also that the business of presenting theatrical entertainments is not commerce. Distinguishing: *International Textbook Co. v. Pigg,* 217 U. S. 91; and *Marienelli v. United Booking Offices,* 227 Fed. 165. The only case in which the question whether Organized Baseball is within the Sherman Act has been directly passed upon is that of *American Baseball Club of Chicago v. Chase,* 149 N. Y. S. 6; in which the court answered the question in the negative.

Congress has not imposed a penalty upon the transportation of players for baseball purposes, and therefore *Hoke v. United States,* 227 U. S. 308, is not in point. While Congress may regulate the movement of persons in

interstate commerce, when it has not regulated move- ment as such, the doing of an act essentially local is not converted into an interstate act merely because people came from another State to do it.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit for threefold damages brought by the plaintiff in error under the Anti-Trust Acts of July 2, 1890, c. 647, § 7, 26 Stat. 209, 210, and of October 15, 1914, c. 323, § 4, 38 Stat. 730, 731. The defendants are The National League of Professional Base Ball Clubs and The American League of Professional Base Ball Clubs, unincorporated associations, composed respectively of groups of eight incorporated base ball clubs, joined as defendants; the presidents of the two Leagues and a third person, constituting what is known as the National Commission, having considerable powers in carrying out an agreement between the two Leagues; and three other persons having powers in the Federal League of Professional Base Ball Clubs, the relation of which to this case will be explained. It is alleged that these defendants conspired to monopolize the base ball business, the means adopted being set forth with a detail which, in the view that we take, it is unnecessary to repeat.

The plaintiff is a base ball club incorporated in Maryland, and with seven other corporations was a member of the Federal League of Professional Base Ball Clubs, a corporation under the laws of Indiana, that attempted to compete with the combined defendants. It alleges that the defendants destroyed the Federal League by buying up some of the constituent clubs and in one way or another inducing all those clubs except the plaintiff to leave their League, and that the three persons connected with the Federal League and named as defendants, one of them being the President of the League, took part in the conspiracy. Great damage to the plaintiff is alleged. The

plaintiff obtained a verdict for $80,000 in the Supreme Court and a judgment for treble the amount was entered, but the Court of Appeals, after an elaborate discussion, held that the defendants were not within the Sherman Act. The appellee, the plaintiff, elected to stand on the record in order to bring the case to this Court at once, and thereupon judgment was ordered for the defendants. 50 App. D. C. 165; 269 Fed. 681, 688. It is not argued that the plaintiff waived any rights by its course. *Thomsen* v. *Cayser*, 243 U. S. 66.

The decision of the Court of Appeals went to the root of the case and if correct makes it unnecessary to consider other serious difficulties in the way of the plaintiff's recovery. A summary statement of the nature of the business involved will be enough to present the point. The clubs composing the Leagues are in different cities and for the most part in different States. The end of the elaborate organizations and sub-organizations that are described in the pleadings and evidence is that these clubs shall play against one another in public exhibitions for money, one or the other club crossing a state line in order to make the meeting possible. When as the result of these contests one club has won the pennant of its League and another club has won the pennant of the other League, there is a final competition for the world's championship between these two. Of course the scheme requires constantly repeated travelling on the part of the clubs, which is provided for, controlled and disciplined by the organizations, and this it is said means commerce among the States. But we are of opinion that the Court of Appeals was right.

The business is giving exhibitions of base ball, which are purely state affairs. It is true that, in order to attain for these exhibitions the great popularity that they have achieved, competitions must be arranged between clubs from different cities and States. But the fact that in or-

der to give the exhibitions the Leagues must induce free persons to cross state lines and must arrange and pay for their doing so is not enough to change the character of the business. According to the distinction insisted upon in *Hooper* v. *California,* 155 U. S. 648, 655, the transport is a mere incident, not the essential thing. That to which it is incident, the exhibition, although made for money would not be called trade or commerce in the commonly accepted use of those words. As it is put by the defendants, personal effort, not related to production, is not a subject of commerce. That which in its consummation is not commerce does not become commerce among the States because the transportation that we have mentioned takes place. To repeat the illustrations given by the Court below, a firm of lawyers sending out a member to argue a case, or the Chautauqua lecture bureau sending out lecturers, does not engage in such commerce because the lawyer or lecturer goes to another State.

If we are right the plaintiff's business is to be described in the same way and the restrictions by contract that prevented the plaintiff from getting players to break their bargains and the other conduct charged against the defendants were not an interference with commerce among the States.

*Judgment affirmed.*