GARDELLA v. CHANDLER et al.

District Court, S. D. New York.
July 13, 1948.

Frederic A. Johnson, of New York City, for plaintiff.

Baker, Hostetler & Patterson, of Cleveland, Ohio, for defendant William Harridge, individually and as President of The American League of Professional Baseball Clubs.

Hedges, Hoover & Tingley, of Columbus, Ohio for defendant George M. Trautman, individually and as President of The National Ass'n of Professional Baseball Leagues.

Edgar P. Feeley, of New York City, for defendant National Exhibition Co.

Willkie, Owen, Farr, Gallagher & Walton, of New York City, for other defendants.

GODDARD, District Judge.

This is a motion to dismiss the action for failure to state a claim upon which relief can be granted and for want of jurisdiction over the subject matter of the action, for lack of diversity of citizenship of the parties.

The plaintiff was employed as a baseball player in the 1944 and 1945 season by National Exhibition Company, the owner of the New York Giants. The defendants are Albert B. Chandler, individually and as Commissioner of Baseball, Ford C. Frick, individually and as President of the National League of Professional Baseball Clubs, an unincorporated voluntary association, William Harridge, individually and as President of the American League of Professional Baseball Clubs, a voluntary unincorporated association, George M. Trautman, individually and as President of the National Association of Professional Baseball Leagues, a voluntary unincorporated ass200ciation, and National Exhibition Company, owner of the New York Giants of the National League.

Plaintiff is a resident of New York. The residence and citizenship of the defendants are not alleged, except that defendant, National Exhibtion Company, is alleged to be a New York Corporation, with its principal office and place of business in New York City.

The complaint seeks to recover treble damages under various sections of the Sherman and Clayton Anti-Trust Acts, 15 U.S.C.A. §§ 1, 2, 3, 13 and 14, and is based solely on alleged violations of these sections of the anti-trust Act and contains three causes of action.

In his First cause of action the plaintiff in substance alleges that these defendants have entered into a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. It further alleges that after the National and the American Leagues were organized, these two leagues on February 3, 1945 entered into a new agreement called the Major League Agreement. This agreement created the office of Commissioner of Baseball, which post is now and the times referred to held by defendant, Chandler; that the Major League Agreement was intended to vest and did vest in the Commissioner disciplinary power over all players and officials in Major League Baseball; that subsequently on December 7, 1946 the National League and the American League entered into an agreement with the National Association of Baseball League [the Minor Leagues] whereby the Minor Leagues recognized the office and power of the Commissioner as it exists under the Major League Agreement; the Major League Agreement and the Major-Minor Leagues Agreement and the rules adopted in accordance therewith forbid any other than a standard or uniform contract to be entered into between club and player; this standard form contract contains a provision [herinafter referred to as the "reserve clause"] whereby the player in signing his contract for the ensuing season or seasons agrees not to sign a contract with or play for any club at the expiration of the period of the contract, other than with or for the club or its assignee, which employs him; this contract also subjects the parties to the interrelated agreements as to the disciplin-

ary power of the Commissioner; the plaintiff then alleges the various grades of leagues and sets forth the teams and their owners comprising the National League and alleges that each of these teams have a home field in the city they represent; that each engage in schedule games for which they charge an admission price; that each club plays seventy-seven games at home and eleven games on the home grounds of its rivals; that in travelling from state to state each club causes to be transported at its own expense the necessary equipment to play the games. The complaint further states that the National League receives part of the proceeds of each game as do the two contesting teams; that in order to complete the schedule state lines are regularly and systematically crossed; that radio broadcasts of the game are given and this right to broadcast the game is a valuable right which the clubs sell to various manufacturers for the purpose of advertising their products; that a baseball club can be and is used as a means of advertising by manufacturers; that with the exception that the Washington team of the American League is in the District of Columbia, the American League and its teams operate the same as the National League teams; that there exists an "All Star" game and "World Series", for which broadcast and television rights are sold for substantial amounts; that radio, television, newspaper publicity and other avenues of communication, as well as the necessary purchase of equipment by the Leagues and Clubs, cause them to be engaged in interstate commerce; that the Minor League Clubs of the International League and the Jersey City Club of this League extends into Canada; that the Commissioner's power extends into Canada, Porto Rica, Cuba, Mexico; and includes the power of the Commissioner to suspend player, coach or manager under certain conditions and for certain violations; that the plaintiff was suspended by the Commissioner for five years; that such suspension deprives the plaintiff of his means of livelihood as a professional player; that such continued suspension will destroy plaintiff's playing ability; that plaintiff's suspension was due to his viola-

tion of the provisions of the Major League Agreement and in particular of the "reserve clause"; that this "reserve clause" establishes the Commissioner as the final umpire of a salary dispute between player and club; that the plaintiff in disregard of the "reserve clause" played for a proessional team, not recognized by Organized Baseball, in Mexico for the season of 1946; that the purpose of the "reserve clause" was to prevent wealthier clubs from buying up all the best talent and to equalize the power of the clubs; that this purpose has not been fulfilled by the use of the "reserve clause" as is evidenced by the continued success of certain teams; that this success has not hurt the drawing power of the game; that the validity of the "reserve clause" has not been litigated between club and player unless the player was an unique performer and was granted an opportunity to play for the club enforcing the provision; that plaintiff was not paid a salary commensurate with an unique performer and defendant New York Giant's representatives have not retracted statements that plaintiff was a secondary player; that in previous baseball wars the ineligibility of Major League players was customarily removed after they had disregarded the "reserve clause" by playing with teams not recognized by Organized Baseball; that representatives of the National Exhibition Company have contributed to the plaintiff's suspension; that the Jersey City Club of the International League is owned and controlled by the National Exhibition Company and the representatives of other minor league "farms" have contributed to plaintiff's suspension; that all the above allegations create a conspiracy in restraint of trade or commerce among the several states and with foreign nations contrary to Section 1 of the Sherman Anti-Trust Act.

The Second cause of action alleges that these same facts constitute a violation of Section 3 of the Sherman Act and Section 14 of the Clayton Act.

The Third cause of action contains all the allegations of the First cause of action and adds allegations of the "farm system" and how minors sign these contracts and cannot disavow them upon reaching ma-

jority; and how the clubs buy and sell this talent under controlled prices created by the agreements heretofore mentioned; and how this "reserve clause" is used as a means of fostering and maintaining monopolies in trade or commerce among the several states and foreign nations in violation of Section 2 of the Sherman Act and Section 13 of the Clayton Act.

The plaintiff alleges these acts have damaged him to the extent of One Hundred thousand [$100,000] Dollars.

The defendants' contention is that neither they nor the plaintiff are engaged in "trade" or "commerce" among the several states within the meaning of the Sections of the Sherman and Clayton Acts.

This precise question, namely—whether the Big League ball clubs as they operated then, were engaged in "trade" or "commerce" within the Sherman Act, was passed upon by the Supreme Court in Federal Base Ball Club v. National League, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898, 26 A.L.R. 357 which held on the record before it, that National League ball clubs were not engaged in interstate "trade" or "commerce" as that language was used in the Sherman Act.

With the exception of the introduction of national advertising upon the radio and television broadcasts of baseball games today, the facts as to the manner and method of operation at the time of the Federal Base Ball Club case are substantially the same as are presented in the case at bar.

In the Federal Base Ball Club case the Supreme Court relied heavily, if not entirely, on Hooper v. California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297, which in turn relied primarily upon Paul v. Virginia, 8 Wall. 168, 75 U.S. 168, 19 L.Ed. 357, holding that the business of insurance is not commerce. In the Hooper case the question was whether an insurance company using some instrumentalities of commerce in effecting a marine insurance policy was engaged in interstate commerce. The court held [155 U.S. 648, 15 S.Ct. 210.] that it was not engaged in interstate commerce and made the distinction between "interstate commerce, or an instrumentality thereof, on the one side, and the mere incidents which may attend the carrying on of such commerce on the other." The authority of Hooper v. California and Paul v. Virginia on the question of "commerce" under the Sherman Anti-Trust Act has been substantially lessened if not completely overruled by United States v. South-Eastern Underwriters Association, 322 U.S. 533, 553, 64 S.Ct. 1162, 1174, 88 L.Ed. 1440, which held that an insurance company which conducts a substantial part of its business across state lines is engaged in "commerce among the several States" and is subject to the provisions of the Sherman Anti-Trust Act. United States v. South-Eastern Underwriters Association held that the decisions in Paul v. Virginia and cases following it are inconsistent with the more recent opinions of the court as to the coverage of the Sherman Act. So it is quite possible that the Supreme Court may not adhere to its earlier decision in the Federal Base Ball Club v. National League case. However, the Circuit Court of Appeals for this Circuit only recently in Conley v. San Carlo Opera Co., 2 Cir., 163 F.2d 310, 311, reaffirmed the controlling authority of the Federal Base Ball Club case where the facts are substantially similar.

Notwithstanding that there seems to me to be a clear trend toward a broader conception of what constitutes interstate commerce than formerly in view of the expanding and changing conditions since the decision in the Federal Base Ball Club case, I feel that as the Circuit Court of Appeals of this Circuit regards Federal Base Ball Club v. National League as authority, this court must do so.

The motion to dismiss the complaint is granted.

Settle order on notice.