**MARTIN et al. v. NATIONAL LEAGUE BASEBALL CLUB.**

No. 259, Docket 21340.

United States Court of Appeals
Second Circuit.
June 2, 1949.

John L. Flynn, New York City, for plaintiffs.

Baker, Hostetler & Patterson, Cleveland, Ohio, Willkie, Owen, Farr, Gallagher & Walton and E. P. Feeley, New York City,

Mark F. Hughes, New York City, argued, for defendants.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND Chief Judge.

■ This is an appeal from an order denying an injunction, pendente lite, in an action under the Anti-Trust Acts, 15 U.S. C.A. §§ 1–3, 13–15, to restore the plaintiffs' to their privileges as baseball players and for damages for their exclusion from "organized baseball." It is a sequel of our decision in Gardella v. Chandler,[1] in which a majority of the court held that the complaint set out a claim under the Anti-Trust Acts against the defendants in that action, who together with others are defendants in this. The plaintiffs in the case·at bar moved for an injunction, pendente lite, to compel the defendants to take them off the "suspended" list, and to restore them to their former position as "eligible" baseball players, freed from the "reserve clause" contained in contracts under which they had been employed until 1946 when they accepted engagements elsewhere. The complaint alleged that the defendants, who are the owners and officers of the "Major Leagues" in baseball, regularly broadcast the games play by play to distant audiences by radio and television; but neither in the complaint nor in any supporting affidavits is it alleged how great a part these activities constitute, either absolutely, or proportionately to the total activities or to the income of the business. By the "reserve clause" a player promises that "while under contract or reservation he will not play baseball * * * otherwise than for the Club or a Club assignee"—4(a)—and that "on or before February 15 * * * of the year following the last written notice to the player * * * the Club or any assignee hereof may renew this contract for the term of that year" at a salary agreed upon, "or in default of agreement the Player will accept such salary rate as the Club may fix, or else he will not play baseball otherwise than for the Club or for an assignee thereof." The club is given the privilege of terminating the contract upon

[1] 172 F.2d 402, 403.

918

ten days notice, so that in effect the player agrees to an indefinite employment at any salary—after the first year—which the club may fix, subject to discharge at the club's pleasure. Although the complaint and the affidavits alleged generally that the defendants had a monopoly of the whole business of "organized baseball," this was denied and stands unproved, saved as we could take judicial notice of it, which we cannot.

The plaintiffs during 1946 were players with the St. Louis team under contracts containing the "reserve clause"; but, finding better pay elsewhere, they joined Mexican teams. Whereupon the defendants, acting for the "Major. Leagues" and for the "Minor Leagues" (59 other teams, affiliated with them), "suspended" them for five years, under the sanction that no players in the "Major Leagues" or the "Minor Leagues" are allowed to play on any team with a "suspended" player. The plaintiffs allege that this has substantially excluded them from their calling by confining them to non-professional, or "semi-professional" teams. The defendants counter by alleging that the "reserve clause" was "indispensable" to the conduct of professional baseball, and that they had not prevented the plaintiffs from playing on any teams except those of the "Major" and "Minor" leagues. The judge denied the motion on three grounds. First, he held that the injunction would "disturb the status quo" by restoring the plaintiffs to positions which they had voluntarily resigned three years before; second, he held that their rights depended upon disputed questions of fact and law; third, he held that they had an adequate remedy at law in the recovery of damages.

█ Of these three grounds we find it necessary to consider only the second. All members of the court in Gardella v. Chandler, supra,[2] held that, if the facts alleged in the complaint, which was all that was before us, had been the same as in Federal Baseball Club v. National League,[3] it would have been our duty to follow that decision, and to hold that the defendants were not engaged in interstate commerce. Judge Chase held that that decision was authoritative in spite of the new facts alleged in

the complaint; Judge Frank and I thought otherwise, although we did so for not quite the same reasons. We both thought that radio broadcasting from the "ball-parks" of narratives of the games play by play, and projecting the actual scene by television, might make the defendants' activities interstate commerce, but Judge Frank thought that it was necessary to look only at the absolute extent of the radio broadcasting and television. If that was substantial, it colored the sum total of the activities and made the business interstate, regardless of the proportion which it bore to the whole. I thought that there had been some interstate activities in the Federal Baseball Club v. National League, supra, but that the court did not regard them as enough to make the business interstate. It seemed to me that it was a question of the proportion of the interstate activities to the whole business, and that the new activities of radio broadcasting and television should be added to the earlier interstate activities, and the sum should be compared with the business as a whole. So far as concerns the present record, it makes no difference which of us was right, for it does not appear what is the extent of the radio broadcasting or the television, either absolutely, or proportionately. We are all agreed that the bare allegation in a complaint that the defendants make contracts with broadcasting and television companies will not support the jurisdiction of the court.

█ Apart from the question of jurisdiction, we are not prepared to say that, on the record now before us, the "reserve clause" violates the Anti-Trust Acts. Such a determination may involve consideration, among other things, of the needs and conduct of the business as a whole. We do not mean that it would not be otherwise, if the record showed, with enough certainty to support a preliminary injunction, that the defendants have established a monopoly of the baseball business, and that the "reserve clause" is a means of maintaining it. If it be established that they do have such a substantial monopoly, the "reserve clause" will take on a different face, as to

2 2 Cir., 172 F.2d 402, 403.

3 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898, 26 A.L.R. 357.

which nothing we say now must be understood to express any opinion.

For the foregoing reasons, we hold, not only that we should not reverse what was in any event a discretionary order, but that the judge came to the only conclusion legally open to him on the record. It would, however, seem highly desirable that the cause should be preferred, and that it should be brought to trial as soon as possible.

Order affirmed.