## TOOLSON v. NEW YORK YANKEES, Inc., et al.
### No. 13070.

United States District Court
S. D. California, Central Division.
Nov. 6, 1951.

Harry W. T. Ross, Gene M. Harris and Howard C. Parke, all of Santa Barbara, Cal., for plaintiff.

Victor Ford Collins, Los Angeles, Cal., for Hollywood Baseball Ass'n.

Gibson, Dunn & Crutcher, Norman S. Sterry, Henry F. Prince, and Philip C. Sterry, all of Los Angeles, Cal., for defendants Pacific Coast League of Professional Baseball Clubs, Los Angeles Baseball Club, Hollywood Baseball Ass'n and Clarence H. Rowland.

HARRISON, District Judge.

Plaintiff brings this action under the provisions of the Sherman Act, 26 Stat. 209, 15 U.S.C.A. §§ 1 and 2, and the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 15. He alleges that he was, and now is, a professional baseball player and that as a result of the alleged monopoly, to which all defendants are allegedly party, he has been deprived of his livelihood. Plaintiff was under contract with the Newark International Baseball Club, Inc., which club assigned his contract to the Binghamton Exhibition Company, Inc. As a result of plaintiff's refusal to report to the latter club, and pursuant to the provisions of his contract with the Newark team and the regulations which govern the structure of "Organized Baseball" in general, he was placed on the "ineligible list" of the Binghamton team, and, defendants, because of this, have refused and still do refuse to allow plaintiff to play professional baseball.

The allegations of plaintiff's complaint with respect to the alleged monopoly to which the defendants are parties do not vary materially from those before the Supreme Court in Federal Baseball Club of Baltimore, Inc., v. National League of Professional Baseball Clubs et al., 259 U.S. 200, 42 S.Ct. 465, 466, 66 L.Ed. 898, 26 A.L.R. 357, and those before the Second Circuit in Gardella v. Chandler, 172 F.2d 402. The structure of "Organized Baseball" is therein outlined, and provisions of the Major-Minor League agreement pertaining to player contracts are listed. In addition, plaintiff, as did his counter-part in the Gardella case, supra emphasizes the broadcasting of baseball exhibitions through the media of radio and television, alleging that receipts from these activities exceed the sum of twenty per-cent of the net profits of professional baseball each year.

■■ All the defendants have moved to dismiss the action on the ground that the court lacks jurisdiction of the subject matter of the action and that the complaint does does not state a claim upon which relief can be granted. Defendant New York Yankees, Inc., has also moved to dismiss on additional grounds that are not pertinent here in view of my ruling on the question of jurisdiction of the subject matter. To me, the simple issue of this case is whether the game of baseball is "trade or commerce" within the meaning of the Anti-Trust Acts, and whether the structure known as "Organized Baseball" is engaged in such trade or commerce. The character of baseball, in the Federal Baseball Club case, was held to be not commerce or trade but sport. Mr. Justice Holmes for a unanimous court stated: "The business is giving exhibitions of base ball, which are purely state affairs." The decision of the Court of Appeals, said Justice Holmes, "went to the root of the case". [259 U.S. 200, 42 S.Ct. 465.] In its opinion the Court of Appeals stated: "The fact that the appellants produce baseball games as a source of profit, large or small, cannot change the character of the game. They are still sport, not trade." National League of Professional Baseball Clubs et al. v. Fed-

eral Baseball Club of Baltimore, Inc., 50 App.D.C. 165, 269 F. 681, 685.

Since the decision in the Federal Baseball Club case, supra, it has been cited with approval three times by the Supreme Court. Hart v. B. F. Keith Vaudeville Exchange et al., 1923, 262 U.S. 271, 273, 43 S.Ct. 540, 67 L.Ed. 977; U. S. v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; North American Company v. Securities and Exchange Commission, 1946, 327 U.S. 686, 694, 66 S.Ct. 785, 90 L.Ed. 945. It has been cited at least six times by the Courts of Appeal, United States v. Fur Dressers' & Fur Dyers' Ass'n, D.C., 1925, 5 F.2d 869, 873; Hart v. B. F. Keith Vaudeville Exchange et al., 2 Cir., 1926, 12 F.2d 341, 47 A.L.R. 775; Boynton v. Fox West Coast Theatres, 10 Cir., 1932, 60 F.2d 851; Neugen v. Associated Chautauqua Company, 10 Cir., 1934, 70 F.2d 605; Conley v. San Carlo Opera Co., 2 Cir., 1947, 163 F.2d 310, 311, a Second Circuit case in which Judge Frank joined; and Martin et al. v. National League Baseball Club, 2 Cir., 1949, 174 F.2d 917, 919. The District Courts have cited it at least seven times, Federal Trade Commission v. Smith, D.C., 1932, 1 F.Supp. 247, 250; In re American State Public Service Co., D.C., 1935, 12 F.Supp. 667; Securities Exchange Commission v. Electric Bond & Share Co., D.C., 1937, 18 F.Supp. 131, 146; Niemiec v. Seattle Rainier Baseball Club, Inc., D.C., 1946, 67 F.Supp. 705; San Carlo Opera Co. v. Conley, D.C., 1946, 72 F.Supp. 825; McComb v. Turpin, D.C., 1948, 81 F.Supp. 86; Young v. Kellex Corp., D.C., 1948, 82 F.Supp. 953, 961. The only decision directly challenging its present day validity is Gardella v. Chandler, supra, in which only one of the members of that court unqualifiedly held baseball today to be engaged in interstate commerce. He was relying on the radio and televising aspects of the game, over the former method of telegraphing the game play by play.

Plaintiff seeks to have this court disregard an adjudication made thirty years ago by the Supreme Court. I am bound by the decision of the Supreme Court. It is not my function to disregard such a de-

cision because it is old. If the Supreme Court was in error in its former opinion or changed conditions warrant a different approach, it should be the court to correct the error. Trial courts in my opinion should not devote their efforts to guessing what reviewing courts may do with prior holdings because of lapse of time or change of personnel in such courts. We are supposed to be living in a land of laws. Stability in law requires respect for the decisions of controlling courts or face chaos.

The words of Judge Chase in the Gardella case seem to me state my position clearly when he said: "In dealing with such a unique aggregate as organized baseball and with a decision in respect to it which seems to be directly in point on the facts, we should not be astute in seeking to anticipate that the court which has the power to do so will change that decision. To do so would not only be an unwarranted attempt to usurp the authority of that court but would make its task in general * * more difficult since it would lead to a constant alteration in the lower courts of its decisions on specific fact situations in the light of what would appear to be differing rules stated in the course of deciding later cases on different facts." [172 F.2d 405.]

Undoubtedly large investments have been made on the strength of Mr. Justice Holmes' opinion in the Federal Baseball Club case, supra, and now a slight shadow has been placed upon the status of such clubs by the Gardella case, supra, by the opinion of Judge Frank wherein he assumes the role of crystal gazer in attempting to determine in advance that the Supreme Court is going to in effect reverse the Federal Baseball Club case.

It is a matter of common knowledge that the status of organized baseball is the subject of a congressional hearing and it may pass legislation that will be determinative of the issue before this court. I believe it is my clear duty to endeavor to be a judge and should not assume the function of a pseudo legislator. It must be remembered that judicial decisions operate retroactively.

If the Federal Baseball Club case is, as Judge Frank intimates an "impotent zombi", I feel that it is not my duty to so find but that the Supreme Court should so declare.

The above entitled action is hereby ordered dismissed for want of jurisdiction of the subject matter.