**PORTLAND BASEBALL CLUB, INC., a corporation, Plaintiff,**

**v.**

**Bowie K. KUHN, Individually and as Commissioner of Baseball, et al., Defendants (two cases).**

**Civ. Nos. 71–53, 71–54.**

United States District Court, D. Oregon.

Dec. 28, 1971.

---

Donald C. Walker, Mark M. McCulloch, Portland, Ore., Kenneth Shetterly, Dallas, Ore., for plaintiff.

Walter J. Cosgrave, Maguire, Kester & Cosgrave, Portland, Ore., Willkie, Farr & Gallagher, Louis L. Hoynes, Jr., Robert J. Kheel, New York City, for defendants.

## OPINION

SOLOMON, Judge:

The Portland Baseball Club, Inc., the former owner of the Pacific Coast League (PCL) franchise in Portland, Oregon, filed these actions against the Commissioner of Baseball, the two major leagues, the individual major league clubs (except Seattle and San Diego), the president of the PCL and the individual member clubs of the PCL for breach of contract and for money had and received.[1] Plaintiff contends that the defendants breached Rule 1(a) of the Professional Baseball Rules (the Rules) by refusing to pay just compensation to the clubs in PCL, including plaintiff, after major league expansion clubs drafted two PCL club territories.

Defendants deny any breach of contract and allege that:

(1) the Court lacks personal jurisdiction over them;

(2) the plaintiff is not the real party in interest; and

(3) plaintiff participated in the arbitration of this issue and is bound by the award.

Until the end of the 1968 baseball season, PCL teams operated in Seattle, Washington, and San Diego, California. On December 1, 1967, the American League adopted a resolution conditionally granting a franchise to Pacific Northwest Sports, Inc. (the Pilots), to operate a major league club in Seattle.

Later, the National League adopted a resolution which invited certain individuals, including stockholders in the PCL San Diego club, to apply for membership in the National League and to operate a franchise in San Diego.

They organized the Padres, and that club signed a membership agreement with the National League on August 15, 1968. It paid the National League $10,-000,000 for league membership and player contracts.

The Pilots signed a membership agreement with the American League on October 1, 1968, and paid $5,535,000 for league membership and player contracts.

On October 22, 1968, the Pilots and the Padres notified the Commissioner of

---

1. Civil No. 71–53 was filed against the American League and its member clubs for compensation for the loss of the Seattle territory to the Pilots. Civil No. 71–54 was filed against the National League and its member clubs for the San Diego territory. The issues of law and fact in both actions are substantially identical, and they were consolidated for trial.

Baseball of their intention to acquire the Seattle and San Diego PCL territories.

These notices were sent pursuant to the Professional Baseball Agreement (the Agreement), and Rule 1(a) [2] of the Rules, which set out procedures by which major league clubs may acquire a territory in which a minor league club operates. The agreement and the Rules govern the relations between the major leagues and the minor leagues. No individual baseball club is a party to the agreement or the Rules. The leagues are parties, and the rights and obligations of the individual clubs stem from their membership in major leagues or in the National Association of Professional Baseball Leagues (the minors). The PCL is a minor league.

Under Rule 1(a) of the Rules, an acquired territory may not be included in a major league until the minor league

## 2. PROFESSIONAL BASEBALL RULES
### BPR 1(a)
### Rule 1
### CIRCUITS

(a) PROTECTION OF NATIONAL ASSOCIATION TERRITORY. No territory in which a National Association franchise is being operated under protection of the Professional Baseball Agreement or National Association Agreement shall be included in any Major League until such National Association League and National Association Club shall be paid such compensation as shall be mutually agreed upon as just and reasonable compensation for such action. A Major League or Major League Club desiring to acquire National Association territory must file notice of its intention to do so with the Commissioner between October 1 and October 31 (both inclusive), next preceding the first season it proposed to operate in such city.

In the event of disagreement as to what constitutes just and reasonable compensation for such action, the Major League or the Major League Club desiring to occupy the National Association territory shall notify the Commissioner of their desire and request that the just and reasonable compensation required to be paid, be determined by a board of arbitration. Upon receipt of such notice the Commissioner shall forthwith appoint a board of seven (7) men to consist of one (1) representative of the National Association League involved, one (1) representative of the National Association Club involved, one (1) representative of the Major League involved, one (1) representative of the Major League Club involved, the President of the National Association, the Commissioner, and a seventh party to be agreed upon by the aforementioned six (6) or if they cannot agree on a seventh member then the Commissioner shall appoint a seventh member.

The Commissioner shall designate a time and place for a meeting of such Board which meeting shall be held within thirty (30) days of the receipt by the Commissioner of request for appointment of such Board.

The Board of Arbitration, after investigation and hearings, shall first determine the amount of just and reasonable compensation to be paid the National Association Club for the drafting of its territory and shall record its determination in a written award signed by a majority of the members of the Board. After such determination and award to the National Association Club, the member of the Board appointed by the National Association Club shall forthwith be replaced by a member appointed by the National Association League, so that the National Association League will have two (2) appointees to the Board. The Board shall then determine the amount of just and reasonable compensation to be paid the National Association League for the drafting of the territory and shall record its determination in a written award signed by the majority of the members of the Board. The Board shall notify the interested parties (National Association Club and National Association League) of such award within ten (10) days after reaching its conclusion. The findings of the Board shall be final and, unless the awards are complied with by the Major League or the Major League Club within thirty (30) days after receipt of such notification, the territory shall remain National Association territory.

Within ten (10) days after the findings of the Board have been complied with, the National Association territory shall be considered Major League territory and have territory protection provided in Paragraph (b) hereof.

A member of a Major League which acquires territorial rights, which Major League rights are not to be exercised until the next following season, shall not be permitted to acquire the contracts of players until October 1 of the current season, but shall then have the same rights to acquire player contracts as any other club in the League, except the right to select player contracts under the provisions of Professional Baseball Rule 5. No club shall have the right to select player contracts until it has exercised its territorial rights through active operation in the season preceding the selection period, except as provided in Professional Baseball Rule 5(c).

and the minor league club which were operating in the territory, "shall be paid such compensation as shall be mutually agreed upon as just and reasonable compensation."

The PCL began separate negotiations with the Pilots and the Padres in late 1968, but could not agree on the amount of compensation. The Rules provide for binding arbitration in these circumstances, and on January 17, 1969, the PCL requested arbitration. In accordance with the Rules, the Commissioner of Baseball convened a seven-member arbitration board to settle the controversy. Don Walker, Secretary of the Portland Baseball Club, Inc., and its attorney, was named as one of the arbitrators.

The Seattle arbitration was held on March 24 and 25, 1969, and the arbitrators unanimously awarded $300,000 to the PCL for the loss of the Seattle territory from the league. As a member club of the PCL, plaintiff received one-tenth of the award.

On March 26, 1969, the PCL and the Padres agreed on $240,000 as just and reasonable compensation for the PCL's loss of the San Diego territory. The parties incorporated the settlement into an agreement by which the PCL agreed that:

"The League (PCL) for itself and member clubs acknowledges that this Agreement is the full understanding of the parties and that the execution of this Agreement constitutes full satisfaction of all claims, causes of action, interests and rights to indemnity whether arising at law, in equity, or pursuant to Professional Baseball Rule 1(a) or any other baseball rule or regulation."

The Pilots paid $150,000 to the PCL in installments, then filed a petition for reorganization pursuant to the federal bankruptcy laws. The PCL claim for the $150,000 balance was allowed by a Referee in Bankruptcy and is now under appeal.

On November 5, 1969, the plaintiff sold "all its right title and interest" in its PCL Portland franchise to the Portland Beavers, Inc., reserving only:

"The balance of the indemnities due to Seller [plaintiff] from Seattle Pilot Baseball Club and San Diego Padre Baseball Club, totalling approximately Thirty Thousand Dollars ($30,000) [which] shall remain the properties of Seller or its assigns . . . ."

The PCL and its present member clubs, although invited, have refused to join plaintiff in prosecuting this action and were therefore made parties defendant. Plaintiff claims no damages from them.

Plaintiff contends that the PCL and its member clubs, other than plaintiff, are so dominated by the major leagues, that any agreement as to compensation made by the PCL could not have been in its, or in plaintiff's, own interest.

On the basis of numerous cases which exempt professional baseball from the application of the federal anti-trust laws, I dismissed the claim of plaintiff based upon alleged violations of these laws by the professional baseball leagues. Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953); Federal Baseball Club of Baltimore, Inc. v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922); Portland Baseball Club, Inc. v. Baltimore Baseball Club, 282 F.2d 680 (9th Cir. 1960).

This case was submitted on the facts stipulated in the pretrial order, the exhibits, depositions and a small amount of testimony submitted by the plaintiff at a prior hearing. The issues were fully briefed.

The defendant major leagues moved to dismiss the action, asserting that the Court had no jurisdiction over them. The moving defendants claimed that they did not transact any business in Oregon from which the plaintiff's claim arises. They also assert that the appli-

cation of Oregon's "long arm statute", ORS 14.035, would go beyond constitutional limits of "fair play and substantial justice." *Shuford Mills, Inc. v. Rainier Travel Service, Inc.*, 296 F.Supp. 240 (D.Ore.1969).

I decided the issue of jurisdiction in plaintiff's favor because I found that there were sufficient contacts in Oregon to make these defendants amenable to service under ORS 14.035.[3]

On November 25, 1969, plaintiff sold all its right, title and interest in the PCL Portland franchise and transferred "all of the rights and privileges flowing thereunder" to Portland Beavers, Inc., a club organized to take over the operation of the Portland PCL franchise. Plaintiff retained only the right to receive the "balance of indemnities due to Seller from Seattle Pilot Baseball Club, and San Diego Baseball Club, totalling approximately Thirty Thousand Dollars."

Rule 17(a) of the Federal Rules of Civil Procedure requires that, "Every action shall be prosecuted in the name of the real party in interest."

The defendants assert that the plaintiff is not the real party in interest because it reserved no rights other than to its share of the money agreed to be paid, but not yet received after the March, 1969, arbitration and settlement with the Pilots and the Padres.

Defendants further assert that if an action exists for further compensation from the major leagues, it belongs to either the PCL or the new owner of the Portland franchise.

I agree.

■ The plaintiff here bases its claims solely on obligations of the major leagues to pay compensation for territories acquired from the PCL. At the sale of the franchise, plaintiff only reserved the right to receive the balance due from the Pilots and the Padres, neither of which is a defendant in this action.

Since plaintiff no longer owns any rights or interest in this action, it is not the real party in interest as required by Fed.R.Civ.P. 17(a).

However, even if plaintiff were the real party in interest, this action must be dismissed because all obligations to pay compensation under Rule 1(a) have been discharged.

Arbitration, pursuant to Rule 1(a), resulted in an award of $300,000 to the PCL for the loss of the San Diego territory. Settlement between the PCL and the Padres fixed $240,000 as just compensation for the San Diego territory.

Plaintiff contends that the major leagues, under the Agreement and Rules, have an obligation to pay compensation for territories acquired from the PCL. Plaintiff contends that only an existing major league club or major league may be a party to the Agreement and the Rules, and that neither the Pilots nor the Padres could be considered major league clubs until they owned territory in which to play baseball. Plaintiff argues that only a party to the Agreement or the Rules can discharge the obligation to pay compensation for acquired territory. Therefore, since the Pilots and Padres were not parties to the Agreement and

---

3. "14.035. *Jurisdiction arising out of certain acts in this state.* (1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

(a) The transaction of any business within this state;

. . . .

(3) Only causes of action or suit or proceedings arising from acts enumerated in this section may be asserted against a defendant in an action or suit or proceeding in which jurisdiction over such defendant is based upon this section."

Rules when they arbitrated and settled the issue of compensation with the PCL, the requirements of Rule 1(a) have never been met, the arbitration was a nullity, and the amounts received should only be considered as mitigation of the obligation of the major leagues to pay compensation for the acquired territories.

Plaintiff contends that the PCL and its member clubs, other than plaintiff, are so dominated by major league interests, that PCL actions should not be considered binding on plaintiff.

These arguments are without merit.

■ Rule 1(a) requires that the PCL be paid compensation before PCL territory may be included in a major league. The rule does not require that a club shall acquire its territory and pay for it before it may be considered a major league club.

I find that the Padres and the Pilots became major league clubs when their membership agreements with the major leagues were signed in 1968.

■ The parties to the arbitration and settlement proceedings assumed that Rule 1(a) governed the compensation dispute. Rule 1(a) procedures were followed throughout. Plaintiff's corporate secretary (plaintiff's counsel here) was one of the seven arbitrators. He represented the PCL on the panel as required by Rule 1(a). He participated throughout the sessions, concurred in the unanimous award, and later wrote a letter to the Commissioner of Baseball expressing his appreciation for the fair and just manner in which the proceedings were conducted.

■■ I find that the constitution of the arbitration panel was proper and that the award was neither fraudulent nor corrupt. The PCL agreed for itself and for its member clubs that the arbitration was binding, and relinquished all further claims under Rule 1(a) after the settlement with the Padres. These acts are binding on the plaintiff.

This opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).