**AMATEUR SOFTBALL ASSOCIATION OF AMERICA, a nonprofit corporation, Petitioner-Appellant,**

v.

**The UNITED STATES of America, et al., Respondents-Appellees.**

**No. 72-1041.**

United States Court of Appeals, Tenth Circuit.

Oct. 3, 1972.

Hines, Klaus & Wilsey, and Lester A. Klaus, Oklahoma City, Okl., for petitioner-appellant.

Walker B. Comegys, Acting Asst. Atty. Gen., Carl D. Lawson, Stephen Rubin, Attys., Dept. of Justice, Washington, D. C., for respondents-appellees.

Before LEWIS, BARNES * and HILL, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from an order of the district court requiring the production of certain documents allegedly relating to and kept by the appellant, Amateur Softball Association of America, a non-profit corporation (herein "Association"), pursuant to a Civil Investigative Demand (herein CID) made by Appellee, United States of America (through its Department of Justice employees) upon said Association, 15 U.S.C. §§ 1311 to 1314.[1] At the same time, appellant's "Petition to Set Aside and Modify Civil Investigative Demand" was denied by the District Court.

The Antitrust Division of the Department of Justice asserted the CID was required by reason of an enquiry instituted by it for the purpose of ascertaining whether there is, or has been a violation by the appellant Association of the Sherman Antitrust Act, 15 U.S.C. § 1.[2]

This appeal raises several issues which the parties describe differently. Appellant suggests error was committed by the district court in ordering compliance with the CID because:

1. Amateur softball is entitled to the same historic exemption from an-

---

* Honorable Stanley N. Barnes of the Ninth Circuit, sitting by designation.

1. "Sec. 2 for the purposes of this chapter —* * * (c) The term 'antitrust investigation' means any inquiry conducted by any antitrust investigator for the purpose of ascertaining whether any person is or has been engaged in any antitrust violation * * *.

"Sec. 3.(a) Whenever the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, has reason to believe that any person under investigation may be in possession, custody, or control of any documentary material relevant to a civil antitrust investigation, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination.

"(b) Each such demand shall—

"(1) state the nature of the conduct constituting the alleged antitrust violation which is under investigation and the provision of law applicable thereto;

"(2) describe the class or classes of documentary material to be produced thereunder with such definiteness and certainty as to permit such material to be fairly identified;

"(3) prescribe a return date which will provide a reasonable period of time within which the material so demanded may be assembled and made available for inspection and copying or reproduction; and

"(4) identify the custodian to whom such material shall be made available.

"(c) no such demand shall—

"(1) contain any requirement which would be held to be unreasonable if contained in a subpena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged antitrust violation.

2. Section 1 reads as follows:

"Sec. 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *."

titrust granted baseball by the Supreme Court of the United States.

2. Amateur athletics are not subject to the Sherman Act,

(a) because they are "amateur";

(b) because they are not engaged in "trade" or "commerce" as those terms are defined in the Sherman Act;

(c) because the Association asserts it is neither a seller, buyer, dealer or trader in sporting goods equipment.

3. The government has failed to investigate, regulate or apply the antitrust laws to other professional and amateur sports, and hence is discriminating against softball; particularly when the government has "not and cannot internally regulate the equipment use of other professional and amateur sports, such as baseball."

4. There is a failure by the government to comply with Antitrust Civil Process Act provisions.

Despite the appellant's suggestion that its appeal presents questions "that have never been decided" by the courts, it makes and urges us to make several assumptions—such as *one*: that softball is entitled to the same antitrust exemption as that granted organized professional baseball by the well known cases of Federal Baseball Club of Baltimore, Inc. v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922); Toolson v. New York Yankees, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953); and Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); or *two*: that amateur sports and/or nonprofit corporations cannot conceivably be held to have engaged in the "trade or commerce" essential to a violation of the Sherman Act.

The recent *Flood* case points out the unique character of organized professional baseball's exemption—as opposed to the specifically expressed lack of exemption of other somewhat similar activities, such as theatre attractions (United States v. Shubert, 348 U.S. 222, 75 S.Ct. 277, 99 L.Ed. 279 (1955)); boxing "exhibitions", United States v. International Boxing Club, 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290 (1955), professional football, Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), and professional basketball, Haywood v. National Basketball Ass'n., 401 U.S. 1204, 91 S. Ct. 672, 28 L.Ed.2d 206 (1971).

Professional baseball's exemption from antitrust laws, said Mr. Justice Blackmun, in *Flood, supra,* is:

"[a]n exception and an anomaly. . . . an abberation confined to baseball." (407 U.S. at 282, 92 S.Ct. at 2112).

The Supreme Court itself has described this exemption as " 'unrealistic', 'inconsistent' and 'illogical' ". *Cf.*: Salerno v. American League, 429 F.2d 1003, 1005 (2d Cir. 1970); cert. denied 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed.2d 452 (1970). Mr. Justice Douglas (who was part of the unanimous court in *Toolson*), refers in his *Flood* dissent to the result in *Federal Baseball Club* as "a derelict in the stream of law that we, its creator, should remove." (407 U.S. at 286, 92 S. Ct. at 2114).

We can only conclude that amateur softball is not presently entitled to rely on the same unique exemption that organized professional baseball has claimed and achieved for so many years.

As to an exemption granted to *amateur* athletics, if any, we conclude that many activities not within the mind of those legislators who drafted the Sherman Act in 1890, or those who passed the Clayton Act in 1914, have more recently been held violative of the very broad and general language of Section 1 of 15 U. S. Code, and the peculiar language of certain sections of the Clayton Act (15 U.S.C. § 18).

Each of the parties hereto insist that STP Corporation v. U. S. Auto Club, Inc., 286 F.Supp. 146 (S.D.Ind.1968) favors their position on this appeal. Appellant emphasizes that the government

is here attempting to interfere with its *internal rules and regulations*, just as it allegedly was in *STP, supra* (which rule had been adopted for reasons of safety, competition, and the conducting of racing events). The government relies on certain language as to the jurisdiction which the court held to exist—

> "The Court concludes that in consideration of all the activities of the USAC and its mode of operation that, *in general, it is within the reach of and subject to the anti-trust laws. . . .*" (Conclusion of Law No. 14); *(idem*, p. 171; emphasis in part).

While it is true Judge Steckler had some trouble in finding jurisdiction under the antitrust laws *(idem,* p. 151), he did finally conclude he did have jurisdiction. (Upon trial, however, he concluded there has been no violation thereof). But his ultimate finding is of small precedential value to us at this state of this case.

Any exemption claimed for amateur sports is, in short, one of the issues "wholly inappropriate for this Court's determination in the present posture of this proceeding." (Gov. Br., p. 15). We cannot conclude, in the present status of this appeal, that amateur softball is or is not engaged in commerce.

We hold that issues 1, 2(a) and 2(b) outlined above are matters that cannot be determined on the record before us on this appeal.

With respect to issue 2(c) above, the Association's brief again characterizes the government's investigation as one into the "internal structure, rules and regulations of Amateur Softball." On the other hand, the CID itself states the

Justice Department's investigation is to determine whether the activities and agreements of the Association, its members, and *certain softball manufacturers* have restrained trade or commerce in softballs and softball equipment.

■ A simple self-serving assertion expressed in the form of a conclusion by the recipient of a CID that it is not in "business" that is within the "trade or commerce" defined in the Sherman Act, does not and cannot isolate contracts, agreements, or conspiracies which restrain trade or commerce in commercially sold articles (or the groups or individuals involved therein and the parties thereto) from the thrust and operation of the antitrust laws. American Medical Assn. v. United States, 317 U.S. 519, 528–529, 63 S.Ct. 326, 87 L.Ed. 434 (1942); Northern California Pharmaceutical Assn. v. United States, 306 F.2d 379, 384 (9th Cir. 1962), cert. denied, 371 U.S. 862, 83 S.Ct. 119, 9 L.Ed.2d 99 (1962).[3]

■ We agree with the government's assertion the very fact that the appellant here

> ". . . concedes that '[n]o authority exists which absolutely determines the question of antitrust exemption for coverage of Amateur Athletics' (Assn. Br. at 51) and that '[n]o Court decision or legislation is known to cover Amateur Athletics' *(id.* at 33)." [Appellee's brief at 14]

requires a further investigation and inquiry into the issues raised. In Bridge Corporation of America v. American Contract Bridge League, Inc., 428 F.2d 1365, 1370 (9th Cir. 1970), cert. denied,

---

3. Appellants also rely on the asserted fact that "ASA does not buy, sell, trade, deal in, or conduct any commercial activity in connection with the marketing of softballs, or softball equipment." (Brief, p. 9)

Compare the fact recited in Part I of a late Supreme Court Anti-Trust case: United States v. Topco Associates, Inc., 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (decided March 29, 1972), where a non-profit association "did no grocery

business under its own name." It contracted with its members. *Topco* involved a "horizontal territorial limitation" and hence "are naked restraints of trade with no purpose except stifling of competition," —and therefor a *per se* violation of the Sherman Act. We do not suggest that any such facts exist here. We emphasize we cannot know or determine what appellant's course of conduct has been until the facts have been collected and determined.

401 U.S. 940, 91 S.Ct. 940, 28 L.Ed.2d 220 (1971), the court of appeals noted: "As was said in Maple Flooring Mfrs. Assn. v. United States, 268 U.S. 563, 579, 45 S.Ct. 578, 583, 69 L.Ed. 1093 (1925) and quoted in Joseph E. Seagram & Sons, Inc. [v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir., 1969), certiorari denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970)]:

'[I]t should be remembered that this court has often announced that each case arising under the Sherman Act must be determined upon the particular facts disclosed by the record, and that the opinions in those cases must be read in the light of their facts and of a clear recognition of the essential differences in the facts of those cases, *and in the facts of any new case to which the rule of earlier decisions is to be applied.*'" [Emphasis supplied.]

"In the present case, substantial factual issues regarding the actual nature, purpose, and scope of the license agreements and conduct of the Association have yet to be resolved. It is just such facts which Congress expressly authorized the Antitrust Division to fully investigate under the Antitrust Civil Process Act prior to the filing of a complaint. *See* S.Rep. No. 1090, 87th Cong., 1st Sess., at 9 1961); H.R.Rep.No. 1386, 87th Cong., 2d Sess., at 3–4 (1962). Such issues are wholly inappropriate for this Court's determination in the present posture of this proceeding." [Appellee's brief at 14–15]

Nor will the alleged failure of the government "to investigate, regulate or apply the antitrust laws to other professional and amateur sports" justify a reversal of the ordered compliance with the CID subpoena. We know of no rule of law which says one who does violate the law can complain that other violators have not been prosecuted. We have no present opinion, of course, that Amateur Softball has or has not violated the law. Nor can we, with this record before us, come to any conclusion on that matter. We do say the government should be allowed, under proper substantive and procedural safeguards, to ascertain the facts, just as it or private litigants have done before, in various sporting activities. *See: United States Int. Boxing Club, supra* (boxing); Radovich v. National Football League, *supra* (professional football); Haywood v. National Basketball Ass'n., *supra* (professional basketball); Deesen v. Professional Golfers Ass'n., 358 F.2d 165 (9th Cir., 1966) cert. denied, 385 U.S. 846, 87 S.Ct. 72, 17 L.Ed.2d 76 (1966) (professional golf); Peto v. Madison Square Garden Corp., 1958 Trade Cases ¶69, 106 (S.D. N.Y., 1958) (professional hockey); California Clippers v. Soccer Football Ass'n., Civ. No. 51833 (N.D.Cal., 1972).

This brings us to the fourth issue raised: (a) has the government complied with the requirements of the Civil Antitrust Act? and if so, (b) is the CID violative of the lawyer-client privilege? and (c) is the CID too wide in its scope?

Appellant's arguments as to the lawyer-client privilege must be left, in the first instance, at least, to the judicial discretion of the trial judge. We assume if the documents requested fall within the limits of attorney-client privilege, that beneficial rule of law will be respected; and if we are in error, adequate remedies exist; either directly, or on appeal. We cannot act in the vacuum existing when the specific documents in dispute have not yet been supplied or authenticated to be existent. The same rule applies to the alleged "broadness" of the CID.

We find no merit in the other issues raised by appellant, such as due process and unequal protection of the laws.

The order of the District Court is affirmed.