See also 19 F.R.D. 346.

The BUDD COMPANY

v.

UNITED STATES of America.

Civ. A. No. 15476.

United States District Court
E. D. Pennsylvania.

Feb. 20, 1957.

Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Jos. L. McGlynn, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This is a suit for refund of plaintiff's 1947 federal corporation income tax involving (a) the amount of plaintiff's net operating loss for the year 1946 available for carry-over to 1947, (b) defendant's contention that a refund of 1944 federal excess profits tax, as a result of the 1946 loss, which refund was received in 1947, should be included in taxable income in either 1946 or 1947, and (c) defendant's contention that the statute of limitations bars plaintiff's claim as to amounts paid into the Collector's suspense account prior to filing of the 1947 return, since they were received by the Government more than three years prior to the filing of the refund claim (see Section 322(b) (2) (A) of the Internal Revenue Code of 1939, as amended to August 1951, 26 U.S.C. § 322(b) (2) (A)[1]), even though these amounts had not been credited to plaintiff's 1947 income tax until a date which was within three years of the date this refund claim was filed.

### I. Findings of Fact

1. Paragraphs 1 to 3(b),[2] inclusive, of Plaintiff's Requests for Findings of Fact.

2. By letters of March 3, 1948, and May 18, 1948, plaintiff was granted an

[1] Unless otherwise specified, all references to the Internal Revenue Code or to the Code are to the 1939 Code as it existed during the period from January 1, 1944, to August 1, 1951 (the refund claim was filed in July 1951).

[2] In addition to the references to the notes of testimony contained under plaintiff's Request 3(b), there is added reference to pp. 214-5.

extension of time until July 15, 1948, within which to file its 1947 federal income tax return, which return would normally have been due on March 15, 1948 (Stipulation, paragraphs 4 & 6, and Exhibits A and C).

3. Paragraphs 14, 16 and 17 of Plaintiff's Requests for Findings of Fact.

4. The moneys received from plaintiff by the Collector on March 15, 1948, and June 15, 1948, were deposited with the local Federal Reserve Bank in the name of the Collector of Internal Revenue, with credit being applied to the Treasurer of the United States.

5. On July 13, 1948, plaintiff filed with the then Collector of Internal Revenue its 1947 United States Corporation Income Tax Return (Form 1120) with the word "COMPLETED" typed at the top of it and showing an income tax due on Line 38 of $1,616,277.36 (Stipulation, paragraph 8, and Exhibit D).

6. Paragraphs 19 to 23, 4 to 8, and 26 to 28a, inclusive, of Plaintiff's Requests for Findings of Fact.

7. Paragraphs 29(a), 30 and 31 of Plaintiff's Requests for Findings of Fact.

8. Plaintiff sustained a net operating loss of $6,457,421.78 for the calendar year 1945 (Paragraph 23 of Stipulation filed 12/19/56).

9. Paragraphs 10 to 12,[3] inclusive, of the Plaintiff's Requests for Findings of Fact.

## II. Conclusions of Law

1. The court has jurisdiction over the subject matter and the parties.

2. Paragraphs 1(i) to (iv), inclusive, of Plaintiff's Requests for Conclusions of Law.

■ 3. The credit of $1,942,622.64 under Section 3806(b) of the Internal Revenue Code, 26 U.S.C. § 3806(b), if it is taxable income, accrued in 1945, since all events necessary to entitle plaintiff to this item occurred prior to January 1, 1946, and this item could not constitute taxable income to plaintiff in 1946. See H. O. Boehme, Inc. v. Commissioner, 1950, 15 T.C. 247, Acq. 1951 C.B. p. 1.

4. Paragraphs 4(c)(2) and 4(c)(3) of Plaintiff's Requests for Conclusions of Law.

■ 5. If the refund of 1944 excess profits tax of $4,968,554.12 were to constitute taxable income to plaintiff, then, since plaintiff is on the accrual basis, it could not constitute taxable income in 1947, since all of the events occurred prior to 1947 which entitled plaintiff to a refund by reason of Sections 23(s) and 122(b)(1) of said Code, 26 U.S.C. §§ 23(s), 122(b)(1), requiring plaintiff to carry back its 1946 net operating loss as a deduction against its 1944 net income.

6. Paragraphs 5(c)(2), 5(c)(3) and 5(d)[4] of Plaintiff's Requests for Conclusions of Law.

■ 7. The net operating loss of $10,808,499.53 sustained by plaintiff for the calendar year 1946 is not subject to any adjustment on account of the item of $1,235,511.52 of 1944 excess profits tax referred to in paragraph 20 of the Stipulation of Facts.

8. Paragraphs 8 and 9 of Plaintiff's Requests for Conclusions of Law.

■ 9. The Tentative U. S. Corporation Income Tax Return for the calendar year 1947, which plaintiff filed on March 15, 1948, with the then Collector, was not a return within the meaning of that word as used in either Section 52 (a) or Section 322(b)(2)(A) of the Code, 26 U.S.C. §§ 52(a), 322(b)(2)(A). See Florsheim Bros. Dry Goods Co. v. United States, 1930, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542.[5]

3. After the $10,808,499.53 (basic 1946 loss in paragraph 20 of Stipulation) is reduced by the $1,543,729.15 (1944 net income computed in paragraph 22 of the Stipulation filed 12/19/56) and the $1,011.47 (referred to in paragraph 21 (b) of the Stipulation), there is left over $9,000,000 of loss to offset 1947 net income of less than $8,000,000 (paragraphs 21(b) and 25 of the Stipulation).

4. The word "further" is eliminated from the first line of this paragraph.

5. See, also, cases cited at page 39 of plaintiff's Closing Brief.

10. Paragraphs 2(ii) and 2(iii) of Plaintiff's Requests for Conclusions of Law.

■ 11. Plaintiff's objections to the admissibility of evidence offered by the Government are overruled in view of the trial judge's ruling permitting the second amended answer to be filed and the authorities cited by defendant at pages 25 to 29 of its brief filed in May 1956. Tax computations testified to by witnesses for both parties are opinions as to the application of the law and are not binding on the court.

12. Plaintiff is entitled to judgment against defendant (for 1947 income tax and interest thereon overpaid) in the amount of $2,796,918.28, interest thereon as provided by law, and its costs.

### III. Discussion of the Law

A. Computation of plaintiff's 1946 net operating loss available for carryover to 1947

■ Section 23(s) of the Code provides that in computing net income for 1947, plaintiff was entitled to a deduction from gross income of the "net operating loss deduction" for 1946 computed as provided in Section 122.[6] Section 122(a) defines "net operating loss" as "the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)." Subsection 122(d) (6) permits the deduction of taxes "imposed by subchapter E of Chapter 2 [excess profits taxes] paid or accrued within the taxable year." The Government contends that this deduction of accrued excess profits taxes, which Congress has provided for in Section 122(d) (6) and which is the basis of the 1946

loss carry-over resulting in this claim for refund of 1947 income tax, should result in the inclusion in plaintiff's gross income for 1946 or 1947 of the amount of the excess profits tax refunded ($4,968,-544.42). Plaintiff became entitled to this amount ($4,968,544.42) as the result of the carry-back of this same 1946 loss to 1944 for purposes of recomputing the 1944 excess profits tax. The hearing judge, after examination of the record and the briefs in Lewyt Corp. v. Commissioner, 1955, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029,[7] finds that the United States Supreme Court has rejected that contention by its decision in the Lewyt case for the reasons summarized under these two arguments of the Government:

1. Argument that plaintiff has not sustained its alleged burden of showing an overpayment of taxes which equitably belongs to it (pages 16–19 of Government's brief of May 1956).

An examination of the briefs and the opinion of the Supreme Court in the Lewyt case, supra, has convinced the hearing judge that cases on this point cited by defendant, such as those referred to on pages 2 and 3 of the opinion filed August 29, 1956, in this matter, are inapplicable to this case in view of that decision. At pages 17 and 18 of the Government's Supreme Court brief in the Lewyt case, the argument was made that Congress only intended the net operating loss adjustment to be effective where there was a real economic loss. The opinion of the United States Supreme Court considered and rejected this argument with the following language in 349 U.S. at pages 239–340, 75 S.Ct. at page 739:[8]

---

6. Sections 122(b) (1) and (2) and Section 122(c) provide that a net operating loss for a given taxable year, first, may be applied as a deduction in computing net income for the two preceding taxable years (called a "carry-back") and, second, any excess may be applied as a deduction for the two succeeding taxable years (called a "carry-over"). The year 1945 can be disregarded here as the loss for that year (see Finding of Fact No. 8)

was carried back, apparently, to 1943 (see page 20 of defendant's May 1956 brief).

7. The opinions of the lower courts in the Lewyt case are reported at 1952, 18 T.C. 1245, and 2 Cir., 1954, 215 F.2d 518.

8. The language of the dissenting opinion in the Lewyt case, at pages 249–252 of 349 U.S., at pages 744–745 of 75 S.Ct., also shows that this argument was considered by the Supreme Court.

"* * * The argument is that the taxpayer having once got back, through credit or refund, the difference between the amount of the tax 'accrued' in 1944 and the amount finally determined to be due, no double benefit should be inferred. The double benefit, it is argued, should certainly be denied when the figure upon which it is based has no economic reality.

"But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall."[9]

2. Argument that the refund of 1944 excess profits tax constitutes income under the tax benefit principle, since this tax is deductible in computing the net 1946 operating loss forming the basis of this claim for refund of 1947 income taxes (pages 19–25 of Government's brief of May 1956).

Again, the United States Supreme Court would have reduced the taxpayer's 1946 net operating loss in the Lewyt case [10] by the amount of its 1944 excess profits tax refund (which accrued on the last day of 1946 when that loss became certain) if this principle was applicable in this situation.[11] Although this principle was not contained in the Supreme

9. See, also, United States v. Olympic Radio & Television, Inc., 1955, 349 U.S. 232, 236, 75 S.Ct. 733, 99 L.Ed. 1024; Diamond A Cattle Co. v. Commissioner, 10 Cir., 1956, 233 F.2d 739, 742. It is noted that the United States Court of Appeals for the Third Circuit has been reluctant to apply equitable principles of estoppel and election in tax cases where, as here, there is no element of the taxpayer's misleading the Government. See Commissioner of Internal Revenue v. Mellon, 3 Cir., 1950, 184 F.2d 157, 159–160.

10. The facts disclosed by the record in the Lewyt case are similar to those presented by this record on this point. The opinion of the United States Court of Appeals for the Second Circuit in the Lewyt case had held that the application of Section 122(d) should "in effect be looked at from the vantage point of a five year period, that is the current taxable year plus two 'carry-back' and two 'carry-over' taxable years" 215 F.2d 518 at page 527. This approach would be consistent with applying the tax benefit principle in this situation to include a refund accruing in 1946 in computing 1947 gross income because 1947 turned out to be a profitable year. Although the Supreme Court recognized that Section 122 was designed to spread losses over 5 years, it rejected the above-quoted language, saying in 349 U.S. at pages 242 and 243, 75 S.Ct. at page 740:

"It would seem therefore that the concept 'accrued' embodies the annual accounting principle. If, in case of a taxpayer on the accrual basis, events after the taxable year are taken into account, the word 'accrued' would be effectively read out of § 122(d) (6) or given a varied meaning, contrary to our ruling in the Olympic Radio case [United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024].

"It is true that the computations under § 122 are designed to spread losses over a five-year period. But we are concerned with a technical concept that is being used as the basis of the formula for that reallocation. * * *

"* * * when an amount is arrived at by proper application of recognized accounting principles on the accrual basis, the test of § 122(d) (6) has been met. Events and transactions of later years, irrelevant to a determination of income on the accrual basis, do not warrant alteration of the figure computed under § 122(d) (6) for the year in question."

Although the tax benefit rule was not mentioned as such in the Lewyt briefs or opinion, the approach adopted by the United States Supreme Court and the holding of that court are inconsistent with its application to this situation.

11. As pointed out by plaintiff, the tax benefit principle has been applied in the past by appellate courts to cases where a deduction has been taken prior to the re-

Court briefs or opinion, the federal appellate courts have laid down the rule that a lower federal court should not disregard a holding of the United States Supreme Court on the ground that a certain legal point had not been raised. See Bingham v. United States, 1935, 296 U.S. 211, 218–219, 56 S.Ct. 180, 80 L.Ed. 160;[12] United States ex rel. Trinler v. Carusi, 3 Cir., 1948, 168 F.2d 1014, 1016; Bank Line v. United States, 2 Cir., 1938, 96 F.2d 52, 54;[13] Kowalski v. Chandler, 6 Cir., 1953, 202 F.2d 413, 414, affirmed 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64; cf. Sunbeam Corp. v. Wentling, 3 Cir., 1951, 185 F.2d 903, 905, vacated on other grounds 1951, 341 U.S. 944, 71 S.Ct.

1012, 95 L.Ed. 1369; Tucker v. Norton, D.C.E.D.Pa.1943, 49 F.Supp. 483, 484.

■ Furthermore, since (a) the definition of "prior tax" in Section 22(b)(12)(B) of the Code is limited to a "tax on account of which a deduction or credit was allowed for a prior taxable year," (b) the only years for which the deduction for the 1944 excess profits tax refunded could have been allowed are 1946 (the year in which the refund accrued[14]) or 1947 (when it was received), and (c) neither of these years is a "prior taxable year" to the year the refund accrued, the trial judge can find no merit in defendant's contention in its second amended answer[15] that the $4,968,544.42 of

ceipt (in this case refund) of the item sought to be included in gross income under the terms of Section 22(a), 26 U.S.C. § 22(a). See, for example, Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Where no deduction has been taken prior to the receipt of a refund of an item such as federal taxes, such receipt has always been considered a return of capital and not subject to tax under the Sixteenth Amendment. See Bartlett v. Delaney, D.C. Mass.1948, 75 F.Supp. 490, 492, 495, affirmed 1 Cir., 1949, 173 F.2d 535, certiorari denied 1949, 338 U.S. 817, 70 S.Ct. 59, 94 L.Ed. 495. Cf. Eisner v. Macomber, 1920, 252 U.S. 189, 206–218, 219, 40 S.Ct. 189, 64 L.Ed. 521; Burnet v. Logan, 1931, 283 U.S. 404, 412–413, 51 S.Ct. 550, 75 L.Ed. 1143; Electric Storage Battery v. Rothensies, D.C. E.D.Pa.1944, 57 F.Supp. 731, 733, affirmed 3 Cir., 1945, 152 F.2d 521, reversed on other grounds, 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296.

12. In the Bingham case, the court said, 296 U.S. at page 219, 56 S.Ct. at page 181:

"This court, without stopping to recite the various specific provisions that were thus clearly brought to its attention, held that the proceeds of none of the policies were subject to the estate tax under section 402(f). It fairly must be concluded that in reaching that result these provisions were. considered, and that such of them as bore upon the problem, there as well as here presented, were found not to require a different determination. We think the points now urged by the government were decided in the Frick case [Lewellyn v. Frick, 268

U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934], and find no reason to reconsider them."

13. In the Bank Line case, the court said 96 F.2d at page 54:

"It is true that in neither case was the question raised that such a recovery would be inequitable, but, so far as we can see, that is true as well in the case of a deposit as of a bond, and we should hesitate to disregard a holding of the Supreme Court, because the point had not been raised."

See, also, Gardella v. Chandler, 2 Cir., 1949, 172 F.2d 402, 405, where the court said:

"In dealing * * * with a decision * * * which seems to be directly in point on the facts, we should not be astute in seeking to anticipate that the court which has the power to do so will change that decision. To do so would not only be an unwarranted attempt to usurp the authority of that court but would make its task in general much more difficult since it would lead to a constant alteration in the lower courts of its decisions on specific fact situations in the light of what would appear to be differing rules stated in the course of deciding later cases on different facts. We relied on Federal Base Ball Club v. National League, supra [259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898], in our recent decision in Conley v. San Carlo Opera Co., 2 Cir., 163 F.2d 310, and until, and unless, we are advised by competent authority that it is no longer the law we should continue to abide by it."

14. See Conclusions of Law 5 and 6.

15. See Second Separate Defense of this Answer, which was filed, pursuant to the

1944 excess profits tax refund, which accrued in 1946 and was received in 1947, is "taxable income to the plaintiff * * under the Tax Benefit Rule as provided in Section 22(b) (12) * * *." [16]

B. Possible Application of the Statute of Limitations

 Defendant contends that the terms of Section 322(b)(2)(A)[17] prevent the refund of the $400,000 paid on March 15, 1948, when plaintiff filed his "tentative" return and the $400,000 paid on June 15, 1948, which amounts were placed by the Collector to plaintiff's credit in his suspense account, since "the amount of the * * * refund shall not exceed the portion of the tax paid * * during the three years immediately preceding the filing of the claim [July 11, 1951]." [17] However, the United States Supreme Court has held that amounts paid on account of a tax to be computed in a return to be filed later and placed in a Collector's suspense account are not "paid" for the purpose of the statute of limitations until they are applied by the Collector, through assessment or similar action, to the particular tax involved. See Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535.[18] The trial judge has been unable to find any significant differences in the facts before the court in the Rosenman case and the facts in this case on this issue.[19] The opinion in the Rosenman case used

trial judge's order, on 12/19/56 (see paragraph 29 of Stipulation).

16. The legislative history of the Section of the Revenue Act of 1942, adding this Section 22(b) (12) to the Code, indicates that Congress never contemplated its application to this situation. See Report No. 2333 of the Committee on Ways and Means of the House of Representatives, 77th Congress, First Session (1942–C.B., pp. 409 ff. and 426 ff.) and Report No. 1631 of The Finance Committee of the U. S. Senate (1942–2 C.B., pp. 565 ff.). Also, the following definition of "recovery exclusion" in Section 22(b) (12) (D), if literally read, would apply to this factual situation existing in 1946, when the excess profits tax refund, if it was income, accrued, since the 1944 excess profits tax "*did*" not result in any reduction of plaintiff's income tax until 1947:

"The term 'recovery exclusion', with respect to a * * * prior tax * * * means the amount * * * of the deductions or credits allowed, on account of such * * * prior tax * * * which *did* not result in a reduction of the taxpayer's tax under this chapter [the income tax] * * *." (Emphasis supplied.)

Any reduction of plaintiff's tax occurred on the basis of events taking place during the year 1947 (plaintiff's profit in that year), which was the year after this excess profits tax refund accrued in 1946 and which 1947 profit could not have been known in 1946.

17. This section of the Code contains this language:

"*Limit on amount of credit or refund.* The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years immediately preceding the filing of the claim."
Conclusion of Law No. 9 makes clear that the word "return" as used in this section refers to the Completed Return filed July 13, 1948.

18. The Findings of Fact and Opinion of the Court of Claims are set forth at 53 F.Supp. 722, 101 Ct.Cl. 437.

19. In both the Rosenman case and this case, these facts are present: (1) An extension of time was secured within which to file the return but no extension of time was obtained within which to pay the tax. (2) The tax payments made in advance of filing the returns were made in round figures on account of a tax, the amount of which was to be determined later. (3) The amounts paid prior to filing the return were placed in the Collector's suspense account to the credit of the taxpayer without being designated for any particular tax. (4) No interest was payable by the Government on any overpayment involved in these amounts paid prior to filing the return during the period prior to their withdrawal from the suspense account and application to the particular tax involved (see Mitchell v. Westover, D.C.S.D.Cal.1950, 90 F. Supp. 278, 279 and footnote 26 below). (5) The statutory language is not materially different. Compare "The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim * * *", see page 659 of 323 U.S., 65 S.Ct. at page 537, with language

this language in rejecting the defendant's contention 323 U.S. at page 662, 65 S.Ct. at page 538:

"But the Government contends 'payment of such tax' was made on December 24, 1934, when petitioners transferred to the Collector a check for $120,000. This stopped the running of penalties and interest, says the Government, and therefore is to be treated as a payment by the parties. But on December 24, 1934, the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until April 1938. And this is the practical construction which the Government has placed upon such arrangements. The

Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due."[20]

The Government relies on language used in reports of Congressional Committees[21] and of the Association of the Bar of the City of New York,[22] concerning pro-

---

in foot note 17 above. (6) The amounts in the suspense account were first applied to the particular tax involved within three years of the filing of the refund claim. (7) The policy considerations relied on in the Rosenman opinion are equally applicable here, namely, at page 663 of 323 U.S. at page 538 of 65 S.Ct.:

"Exaction of interest from the Government requires statutory authority, and it merely carries out the true nature of an arrangement such as this to treat it as an estimated deposit and not as a payment which, if in excess of what should properly have been exacted, entitled the taxpayer to interest as the return on the use that the Government has had of moneys that should not have been exacted. * * * On the other hand, by allowing such a deposit arrangement, the Government safeguards collection of the assessment of whatever amount tax officials may eventually find owing from a taxpayer, while the taxpayer in turn is saved the danger of penalties on an assessment made, as in this case, years after a fairly estimated return has been filed. The construction which in our view the statute compels safeguards the interests of the Government, interprets a business transaction according . to its tenor, and avoids gratuitous resentment in the relations between Treasury and taxpayer."

20. The Second Circuit Court of Appeals and the Tax Court followed the view of the Rosenman case on this point in the

Lewyt case, supra, 522–523 of 215 F.2d and 1254 of 18 T.C. The Rosenman case has also been followed by many federal courts. See, also, the many federal cases following the Rosenman case at pages 37 and 38 of plaintiff's Closing Brief.

21. Senate Finance Committee Report No. 1622, 83rd Congress, 2nd Session, p. 145, 3 U.S.Code Cong. & Adm.News, 1954, pp. 4621, 4779, saying "* * * in case of a late return, tentative tax paid on the due date *might* not be refunded * *" (emphasis supplied). The statement is not persuasive evidence of what Congress intended the existing law to be. Also, such change as there is in the language contained in Section 6511(a) and (b) (2) (A) of the 1954 Code, 26 U.S.C. § 6511 (a), (b) (2) (A), does not appear significant as far as this issue is concerned. Compare page 35 of defendant's brief of May 1956 and defendant's Supplemental Memorandum of December 1956 with pages 44–47 of plaintiff's Closing Brief.

22. Since contemporaneous statements concerning pending legislation by individual Congressmen and Senators "are without weight in the interpretation of a statute", McCaughn v. Hershey Chocolate Co., 1931, 283 U.S. 488, 489, 51 S.Ct. 510, 512, 75 L.Ed. 1183, this statement of the Bar Association would not be of great, if any, significance. Also, the statement expressed concern with the situation presented by Southern Sportswear Co., Inc.,

posals to amend the Internal Revenue Code, to support its contention that the statute of limitations is a bar to recovery of these amounts paid prior to filing of the return and placed in the Collector's suspense account. However, even if the language used in these reports was applicable to this situation,[23] non-judicial statements as to the meaning of statutory language made after the enactment of the statute may not be considered in construing the statute. See Fogarty v. United States, 1950, 340 U.S. 8, 13, 71 S.Ct. 5, 95 L.Ed. 10;[24] and United States v. United Mine Workers, 1947, 330 U.S. 258, 281–282, 67 S.Ct. 677, 91 L.Ed. 884.[25] The United States Court of Appeals for the Third Circuit has reached a result consistent with the holding of the Rosenman case on an analogous factual situation. See Busser v. United States, 3 Cir., 1942, 130 F.2d 537.[26]

For the reasons stated above, plaintiff is entitled to judgment.[27] Plaintiff may submit an appropriate order for the entry of judgment in accordance with the foregoing Findings of Fact, Conclusions of Law and Discussion, upon 15 days' notice to defendant.

1948, 10 T.C. 402, which, on this issue, was a very different situation than that before this court and which did not even mention the Rosenman case. See pages 5–7 of defendant's Supplemental Brief.

23. The trial judge believes the language from these reports relied on by defendant is not applicable to the facts of this case for the reasons stated in footnotes 21 and 22 above.

24. In this case, the court said, 340 U.S. at page 13, 71 S.Ct. at page 8:
"Petitioner, in attempting to establish an interpretation of the Lucas Act [41 U.S.C.A. § 106 note] which would allow him to maintain this suit, has placed much reliance on events which occurred in Congress subsequent to its enactment. The second session of the Eighty-first Congress passed H.R. 3436, which was vetoed by the President. 96 Cong.Rec. 8291, 8658, 9602. Thereafter, Congress passed S. 3906, which failed of enactment over another veto of the President. 96 Cong.Rec. 12911, 14652. Petitioner's argument is that these bills and their legislative history show that Congress had a different intent in passing the Lucas Act then that attributed to it by its administrators and some of the courts. If there is anything in these subsequent events at odds with our finding of the meaning of § 3, it would not supplant the contemporaneous intent of the Congress which enacted the Lucas Act."

25. In view of the Supreme Court's statement in the Rosenman case 323 U.S. at page 661, 65 S.Ct. at page 537, that language similar to that involved in this case is "couched in ordinary English" and that "Congress has evidently meant what these words ordinarily convey," it is doubtful whether resort could be had in this case to even contemporaneous legislative history. See Ex parte Collett, 1949, 337 U.S. 55, 69 S.Ct. 944, 93 L. Ed. 1207; Gemsco, Inc., v. Walling, 1945, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921; and cases cited in those cases.

26. This case was relied on by the United States Supreme Court in the Rosenman opinion at page 662 of 323 U.S., at page 538 of 65 S.Ct. where additional similar cases are cited. In the Busser case, the court held that a payment on account of a tax to be computed in a return to be filed late under an extension of time, which payment turned out to be more than the tax due, was not an "overpayment" as that term is used in the language found in Section 3771(a) of the Code, 26 U.S.C. § 3771(a) and, hence, did not bear interest.

27. Since the several briefs filed by counsel in this case have covered the issues at length and because the Government has changed its position several times since filing its original answer in this case, the following briefs filed with the Trial Judge will be placed in the Clerk's file as they may be of assistance to the United States Court of Appeals for the Third Circuit in the event of an appeal: Original brief of 5/24/56, reply brief of 6/18/56, supplemental reply brief of 7/30/56, closing brief and supplement to closing brief of 12/31/56 filed for plaintiff; original brief of May 1956, supplemental brief of 6/20/56, second supplemental brief of July 1956, supplemental memorandum of December 1956, and letter of 1/18/57 filed for defendant. Plaintiff's closing brief has been particularly helpful to the trial judge because of its clear summary of the major points involved in this case.